# Pennsylvania Insurance Department *v.* Johnson, Appellant.

Argued June 14, 1967.  Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Edward O. Spotts,* with him *James P. Gill, John R. Gavin,* and *Spotts, Gill, Gavin & Morrow,* for appellant.

*Charles D. Cowley,* Associate Chief Counsel, with him *Frederic G. Antoun,* Deputy Attorney General, and *William C. Sennett,* Attorney General, for Insurance Department, appellee.

*Robert E. Woodside,* with him *R. J. Woodside, John N. Reid,* and *Woodside & Woodside,* and *Watters, Donovan, Dorsey, Burke & Griffin,* for intervening appellees.

OPINION BY WATKINS, J., November 16, 1967:

These are appeals by Donald R. Johnson, the appellant, from the orders of the Court of Common Pleas of Dauphin County sitting as Commonwealth court, dismissing appeals from adjudications made by the Insurance Commissioner of the Commonwealth of Pennsylvania involving certain insurance rate changes concerning automobile liability insurance coverage and automobile physical damage insurance coverage, respectively.

The adjudications made by the Commissioner approved rate filings made by the National Automobile

Underwriters Association, hereinafter referred to as Association, and the National Bureau of Casualty Underwriters, hereinafter referred to as Bureau, under The Casualty and Surety Rate Regulatory Act of June 11, 1947, P. L. 538, 40 P.S. §1181 et seq.

The Bureau and the Association each filed with the Commissioner proposed revisions of their respective Manual Rules and Rates pursuant to the Regulatory Act, supra. By stipulation, both Bureau and Association are made parties appellees to these appeals.

The subject of the rate filing of the Bureau was for automobile liability insurance coverage applicable to bodily injury and property damage and relating to private passenger cars, commercial vehicles, garage risks and medical payment coverage. The subject of the rate filing of the Association was for automobile physical damage coverage and includes with physical damage coverage, comprehensive and collision coverage.

Under Section 4(a) of the Regulatory Act, supra, such filings are not subject to public inspection until the rate filings become effective. However, at the suggestion of the Commissioner and with the agreement of the Association and the Bureau a public hearing was held on each filing and subsequent thereto the Commissioner approved the rate filings to become effective on October 1, 1965.

Complaints were then filed by the appellant under Section 17 of the Act and it was requested that the approval of the rate filings effective October 1, 1965 be stayed pending disposition of a hearing on appellant's complaints. The request for a stay was denied but public hearings were held on the complaints at which all parties were represented by counsel and where various private persons and citizens also appeared. On March 7, 1966, adjudications were made by the Commissioner dismissing the complaints; the appeals by appellant to the Commonwealth court were dismissed. Hence these appeals.

When the decision of the Insurance Commission is against the complainant, as here, the question for the reviewing court is whether the findings of fact are consistent with each other and with its conclusions of law and the Commission's order and whether its decision can be sustained without a capricious disregard of competent evidence. *Mettetal Unemployment Compensation Case,* 187 Pa. Superior Ct. 291, 293, 144 A. 2d 586 (1958).

The fact finder is not required to accept even uncontradicted testimony as true, *District of Columbia's Appeal,* 343 Pa. 65, 79, 21 A. 2d 883 (1941), and the benefit of every inference which can be logically and reasonably drawn from the evidence must be viewed in the light most favorable to the prevailing party. *Pennsylvania Insurance Department v. Philadelphia,* 196 Pa. Superior Ct. 221, 236, 173 A. 2d 811 (1961).

The reviewing court should not interfere where an administrative agency is clothed with discretion in the discharge of its duty unless the record clearly establishes that there has been a violation of positive law or an arbitrary capricious or unreasonable determination due to the absence of substantive evidence to support its findings. *Pennsylvania Insurance Department v. Philadelphia,* supra, at page 237:

"Insurance rate making is a technical, complicated and involved procedure carried on by trained men. It is not an exact science. Judgment based upon a thorough knowledge of the problem must be applied. Courts cannot abdicate their duty to examine the evidence and the adjudication, and to interpret and apply the law, but they must recognize the value of the judgment of an Insurance Commissioner who is specializing in the field of insurance and the efficacy of an adjudication supported by evidence of experts who devoted a lifetime of service to rate making."

The adjudications of the Insurance Commissioner were based on the following findings of fact:

"(A)   As to the Bureau—

"1.   The Bureau is a voluntary, nonprofit, unincorporated association, whose members are stock insurance companies engaged in the business of casualty insurance, duly licensed in the Commonwealth of Pennsylvania as a casualty rating bureau under Section 6 of the Rate Regulatory Act. The Bureau operates under the applicable provisions of the Commonwealth of Pennsylvania rating laws for various kinds of casualty insurance, including automobile liability insurance; it acts as a rating organization in all states except Hawaii, Louisiana, North Carolina and Texas; it has been in existence since 1910, and in Pennsylvania it has been officially designated as a statistical agent. The Bureau has 77 member companies, 63 subscriber companies and 40 non-affiliated statistical reporting companies. As a rating organization, the Bureau develops rules, rates, rating plans, policy provisions and policy forms, and makes appropriate filings with the various state insurance supervisory authorities on behalf of the Bureau's member and subscriber companies.

"2.   Members and subscribers, combined, of the Bureau write 26% of the premium volume of automobile liability insurance in Pennsylvania. The Bureau's rate filing of June 28, 1965, is applicable to and for the use of said member and subscriber companies in Pennsylvania. Non-affiliated statistical reporting companies making reports to the Bureau represent 16.1% of the total automobile liability insurance volume in Pennsylvania.

"3.   The statistical data utilized by the Bureau in the development of the proposed rate filing was compiled under an automobile bodily injury and property damage liability statistical plan which was initially approved by the Pennsylvania Insurance Department in

1948. The statistical data reported to the Bureau in accordance with the requirements of the approved statistical plan is reviewed, audited and verified by a staff of technical experts employed by the Bureau. The statistical plan approved for use is essentially the same as in all other states. The Bureau's statistical data plan approved by the Pennsylvania Insurance Department provides for separate information by each state and for each of the 40 geographic areas of Pennsylvania for which separate rates are determined; there are separate data for private passenger cars and commercial vehicles, loss data by size of loss, by type of insured, by coverage and by use of the vehicles.

"4. The rate filing of the Bureau as to private passenger vehicle data represents the aggregate experience of members, subscribers and statistical reporting companies of the Bureau writing 42.1% of the total automobile liability insurance in the State of Pennsylvania. Losses resulting from accidents in Pennsylvania caused by out-of-state motorists do not affect rates in Pennsylvania since those losses are charged to the state wherein the vehicle is garaged.

"5. In the rate proposal of the Bureau there is no attempt to recoup previous underwriting losses suffered by member or subscriber companies. Companies reporting to the Bureau sustained the following automobile liability insurance underwriting dollar losses:

"In 1961, $1,626,473; in 1962, $4,764,695; in 1963, $8,931,829; in 1964, $10,660,307.

"Under the Bureau's supporting data for the rate filing, there is an indicated loss and loss adjustment ratio for private passenger car coverage in 1962, of 66.7%; in 1963, a ratio of 75.2%; and in 1964, an increase to a ratio of 82.6%.

"6. The rate level change proposed in the rate filing of the Bureau is 19.7% increase. A comparison of the actual loss and loss adjustment percentage with the

expected loss and loss adjustment percentage indicates a need in Pennsylvania, on combined coverages of bodily injury and property damage liability of additional premium revenue of 21.3%. The proposed 19.7% increase is used by the Bureau to avoid any individual Pennsylvania motorists paying more than 25% increase for combined bodily injury and property damage liability coverage. The average dollar increase for each policyholder's liability coverage amounts to $11.06, representing increases of $4.42 for property damage liability coverage and $6.64 for bodily injury liability coverage.

"7. The Commonwealth of Pennsylvania is divided into 40 geographic areas by the Bureau. Experience data collected by the Bureau from its member, subscriber, and statistically reporting companies, disclosed an average bodily injury liability claim frequency of 26 for each one thousand insured cars. In each of the 40 geographic areas, the liability claim frequency will vary (e.g., there is a claim frequency of 17 in Lebanon, Lancaster and York, and a claim frequency of 67 in Philadelphia). Claim frequency is established in Pennsylvania by charging accident claims to the geographic area where the car is garaged. Property damage liability claims follow a similar pattern to that of bodily injury liability claims.

"8. The average claim payment in the year 1963 increased approximately 5% over the average claim payment in the year 1962.

"The number of claims (claim frequency) in the year 1963 increased approximately 8% over the number of claims in the year 1962.

"The average payment per claim increased approximately 6% from 1963 to the date of the filing.

"The above factors result in the approximately 19.7% average increase proposed in the filing.

"(B) As to the Association—

"1. The Association is a voluntary, nonprofit, unincorporated organization duly licensed in the Commonwealth of Pennsylvania as a casualty rating bureau on October 10, 1947, under Section 6 of the Rate Regulatory Act and was designated as a statistical agent by the Pennsylvania Insurance Department on October 31, 1947. The Association is licensed in 45 states, the District of Columbia and Puerto Rico. This Association has 70 members and 144 subscriber companies operating in Pennsylvania.

"2. Members and subscribers, combined, of the Association write approximately 45% of the physical damage insurance coverage in the Commonwealth of Pennsylvania.

"3. The Association is concerned with the following automobile insurance coverages: collision, fire, theft, windstorm, earthquake, damage due to flood and rising waters, malicious mischief, and glass breakage. These coverages were included in the Association's rate filing of automobile physical damage filed April 20, 1965.

"4. The rate filing of April 20, 1965, by the Association on behalf of its members and subscribers reflected the experience of all member, subscriber and statistical reporting companies through June 30, 1964, and was compiled in accordance with the statistical plan filed in the Pennsylvania Insurance Department under the Rate Regulatory Act, with approved modifications.

"5. The Association's rate filing of April 20, 1965, indicated an average statewide increase of 15.5%. The average statewide increase based on actual experience of member, subscriber and statistical reporting companies, indicated an average statewide increase of 19.6%; the difference between the two percentages is explained in that the Association chose to limit increases or decreases geographically within the Com-

monwealth of Pennsylvania to an amount not exceeding 25% in accordance with the established practice of the Association.

"6. The supporting material for the Association's rate filing of April 20, 1965, when applied to private passenger vehicles, indicated an overall increase of 20.7% for full comprehensive coverage, an increase of 17.3% being proposed. An average statewide premium increase of 19.9% on $50 deductible collision insurance was indicated, the proposed increase being 18.6%. An average statewide premium increase of 23.0% on $100 deductible collision insurance was indicated, a 20.9% increase being proposed. The rate filing proposed an overall private passenger collision increase of 10.9% and a combined physical damage premium for private passenger cars of 18.6%.

"7. The Association's rate filing on commercial physical damage coverage proposed an overall statewide increase of 14%, including an increase of 13.8% on comprehensive coverage and an increase of 15% on collision coverage. For comprehensive coverage only, increases of 11.5% for intermediate hauling and 9% for long distance hauling were proposed. No increase was proposed on either intermediate or long distance collision coverage. The rate filing discloses some reductions on miscellaneous classes of vehicles, such as taxicabs, hearses, fire department vehicles, ambulances, invalid-cars, farm tractors and farm tractor equipment.

"8. The Association used an approved method in arriving at the overall rate level in the filing for comprehensive and all other allied coverages, as well as collision coverage, using the experience statistics of members, subscriber and statistical reporting companies, including earned premium, loss adjustment and other expenses, the repair costs index and 5% for profit and contingencies.

"9. The rate filing of April 20, 1965, included experience from members, subscribers, and statistical reporting companies through June 30, 1964, on both a detailed and overall basis. Subsequent to the filing date, the overall experiences became available through December 31, 1964 (reflected in a chart marked Exhibit G) disclosing a continuing upward trend of the automobile physical damage insurance loss ratio.

"10. The Commonwealth of Pennsylvania is divided into geographic areas by the Association. Members, subscribers, and statistical reporting companies of the Association in Pennsylvania charge accident claims to the geographic area where the car is garaged. Losses resulting from accidents in Pennsylvania by out-of-state motorists are not included in the experience reflected in the rate filing of the Association.

"11. The experience of members, subscribers and statistical reporting companies of the Association reflects an increasing average size of loss on a nation-wide basis, as well as within the Commonwealth of Pennsylvania.

"12. The rate filing of the Association retains the safe-driver plan for persons who qualify.

"An examination of the record supports the findings of the Insurance Commissioner in each appeal."

Appellant contends that the Commission abused its discretion in adopting the new rate schedule and capriciously disregarded the testimony of his witnesses who were certified public accountants.

With this we cannot agree. The appellant's witnesses were not familiar with the rate making process of insurance companies and based their testimony on reports made by bureau companies as published in a magazine. They proposed that the new rates be based on a cash method of accounting which has been rejected by every insurance rate-fixing agency in the country. The Commission adopted the accrual method of

accounting in arriving at the statistical basis for the rates fixed by it, this being the method which is widely accepted throughout the country and this Commonwealth.

Appellant also claims that the Insurance Commission violated the Act of May 17, 1921, P. L. 789, art. II, §205, by engaging the services of Woodward and Fondiller, Inc., as a consultant.

This company furnishes actuarial services, and as a consultant, sent one Lewis H. Roberts, one of their experts, to examine the filings and question the witnesses to determine whether the proposed basis for the new rate schedule was properly conceived and whether any errors could be found. This did not constitute Mr. Roberts or the company an employe of the Commonwealth within the meaning of the Act which provides: "No officer or employe of the Insurance Department shall be employed by or be pecuniarily interested in any insurance company, association, or exchange, or in any insurance business, other than as a policyholder."

This was done out of an overabundance of caution on the part of the Commissioner to double check the work of her own staff, the Association and the Bureau prior to approval of the rate filings.

The competence and integrity of neither Mr. Roberts nor the company are challenged and the procedure of the Commissioner constitutes no basis for complaint.

Appellant's claim that he was not afforded a fair hearing is not borne out by the record and closing arguments of counsel need not be stenographically recorded as this procedure is not required by the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 P.S. §1710.31, which establishes the procedure for hearings such as this.

Order affirmed.