Pennsylvania Insurance Department et al. *v.*
Johnson, Appellant.

544

Argued April 25, 1968. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargu-
ment refused December 30, 1968.

*Edward O. Spotts,* with him *James P. Gill, John R. Gavin, Charles S. Morrow,* and *Spotts, Gill, Gavin & Morrow,* for appellant.

*Charles D. Cowley,* Associate Counsel, with him *Frederic G. Antoun,* Deputy Attorney General, for Insurance Department, appellee.

*Robert E. Woodside,* with him *R. J. Woodside,* and *Woodside & Woodside,* and *Watters & Donovan,* for intervening appellees.

OPINION BY MR. JUSTICE O'BRIEN, November 27, 1968:

In April and June of 1965, the National Automobile Underwriters Association and the National Bureau of Casualty Underwriters who, together, represent companies writing significant portions of the automobile liability and physical damage insurance in Pennsylvania, filed proposed rate increases with the insurance commissioner. The commissioner held hearings on the proposed increases and approved them as filed. Appellant excepted to the rate increase approvals and hearings were held on his complaints by the insurance department. The hearings were held in October 1965, and, on March 7, 1966 the commissioner dismissed appellant's complaints. An appeal from the commissioner's adjudication was filed in the Commonwealth Court and dismissed by that court on February 6, 1967. The

Superior Court affirmed, *Pennsylvania v. Johnson*, 211 Pa. Superior Ct. 138, 238 A. 2d 23 (1967), and we granted appellant's petition for allocatur.

Appellant raises five questions on appeal which may be reduced to three general issues pursued by him throughout this litigation. He argues that: the commissioner conducted the hearings in an unjudicial and discourteous manner and failed to consider a full record by virtue of her refusal to allow the court reporter to take his counsel's closing speech; the record fails to sustain the grant of a 20% rate increase; and a conflict of interest existed by virtue of the retention by the commissioner of an actuarial consultant in connection with her review of the disputed rate filings.

The first of these contentions need not detain us. A careful review of this record fails to substantiate appellant's allegations. At most, we find only hotly pursued advocacy and no indication of discourtesy or attempt on behalf of the commissioner to prevent appellant's counsel from fully presenting his case. Nor do we find error in the refusal of the commissioner to permit a verbatim taking of the closing speech of appellant's counsel. That speech was surely not evidence and we fail to perceive how its noninclusion in the transcribed record prejudiced appellant.

Appellant's second argument is not without difficulty. He contends that the underwriting losses testified to by the Bureau and the Association do not accurately reflect their financial position. He contends that investment income was not taken into consideration and that the accounting method employed by the insurers distorts the profit picture. Specifically, appellant contends that the insurers sustained losses of only 5 to 7% in the year in question. His conclusion is based on a cash method of accounting, or a premiums received against losses paid basis. The insurers, on the other hand, calculate their profits or losses on

the basis of earned premiums against incurred losses. Associations of trial lawyers, underwriters associations, courts and legislative bodies have long been troubled by the procedures used in determining insurance rate structures. The argument will probably rage for some time as to whether insurance companies' profits should be ascertained by subtracting losses and expenses paid from premiums actually received, or whether the traditional unearned premiums reserves and loss and cancellation reserves method should be used. No doubt a very strong case can be made for the proposition that casualty insurance rate structures are artificially inflated by the accounting procedures used in the industry, but we will not substitute our judgment for that of the commissioner as to what constitutes proper insurance accounting practice even though we have grave doubts that the system now used accurately reflects underwriting profits or losses. Nor will we require a consideration of investment income in this case where the commissioner has not seen fit to do so. Again, the arguments of appellant have considerable merit. If the insurers determine their underwriting profits by an accounting method which considers as income only earned premiums, it requires no logical gymnastics to conclude that investment income might be considered; at least that income earned on the unearned (prepaid) portion of the premium.

Appellant's final argument presents an extremely difficult question. The Act of May 17, 1921, P. L. 789, Art. II, §205, 40 P.S. 43, provides: "No officer or employe of the Insurance Department shall be employed by or be pecuniarily interested in any insurance company, association, or exchange, or in any insurance business other than as a policyholder". In the course of this proceeding, the commissioner retained the services of Woodward & Fondiller, Inc. as a consultant. The firm is a nationally known group of actuaries and

one of its experts, Lewis H. Roberts, participated as a member of the commissioner's staff throughout the proceedings. He, in fact, conducted most of the cross-examination. While there is a dispute as to what is or is not of record in this proceeding, there is no serious question that Woodward & Fondiller, Inc. worked for both of the rating bureaus involved, and for several of the companies who would benefit from the rate increase. As consultants, Woodward & Fondiller, Inc. had provided rate making and other actuarial services in the past to these bureaus and companies and presumably still does so. The question which we must determine is whether the services rendered by Woodward & Fondiller, Inc. constitute a violation of the Statute, thereby vitiating the rate approval.

We agree with the courts below that Mr. Roberts' integrity is in no way in question. We cannot agree, however, that he or his firm was not an employee of the commissioner. We believe that to give a narrow reading to the word "employe", limiting the definition to those who are controlled, subject to withholding, etc., is to defeat the obvious intent of the statute. The statute seeks to prevent conflicts of interest in insurance rate making. As in all conflict of interest situations, the proper test is not whether an actual conflict exists but whether the possibility of a conflict exists. *Jedwabny v. Phila. Tr. Co.*, 390 Pa. 231, 135 A. 2d 252 (1957). With this precept in mind and considering the purpose of the prohibition of the statute, we conclude that a liberal interpretation of the term employe is required. Mr. Roberts and his firm were employed by the commissioner in connection with these filings and even if they might not be categorized employes for certain purposes, we are convinced that they were employes within the intendment of the statute.

Despite this conclusion, however, we are not disposed to reverse the judgments below. In order that

the spirit of the statute might be enforced the commissioner should, ideally, have employed on her staff experts who are in no way connected with the industry. Her employment of Woodward and Fondiller does not, however, require our setting aside the approval of these filings. Our review of the record indicates that the commissioner, with the aid of her own staff, had independently reached the conclusion that the requested increases were justified, and that she sought outside advice only to double check the work already done by her own people. This conclusion is borne out by the language of the commissioner's adjudication in the Bureau case, as follows: "Before the rate filing was approved, a detailed analysis of the Bureau's rate filing, together with the supporting data submitted thereunder, was made by the Commissioner and the staff in the Pennsylvania Insurance Department. Additionally, an actuarial study of this rate filing was made by a nationally recognized independent actuarial firm, and a public hearing was held. The conclusions from the analysis, supported by the actuarial study and the information elicited at the public hearing, supports the approval of the filing."

Although we disapprove the practice of engaging experts whose other activities are incompatible with the proscriptions of the statute, we fail to find that such employment here prejudiced the position of appellant.

Order affirmed.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

Because I disagree with the Court's interpretation of "officer or employe of the Insurance Department," I concur in the result. Roberts was a consultant, not an officer or employe.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree with the result reached by the majority but not with all its reasoning.

First, I believe that the majority's suggestion that the accounting system approved by the commissioner distorts insurance company income is improper. The majority correctly decides that this decision is within the commissioner's expert discretion. This is so because here especially we are involved in an area where the commissioner has considerable expertise which the Court lacks. Once this is conceded, I see no reason why the Court should go on to discuss and detail its "grave doubts" about the correctness of the commissioner's judgment. If the Court really has sufficient reason to express "grave doubts," which I believe is not the case here, it should reverse the commissioner's determination. Otherwise, it should merely defer to the commissioner's discretion.

As to the conflict of interest issue, at the outset I am not convinced that the proper relief, even were the actuary here involved within the prohibition of 40 P.S. §43, would be to vitiate the rate proceeding absent showing of prejudice (which I assume would vitiate the proceeding regardless of whether a violation of §43 existed). I do not believe that this need be decided however, because I think that the majority is wrong in holding that the actuary in this case falls within §43. Here the actuary was an independent contractor of *both* the commissioner and the bureaus and companies, and I do not believe that the statute prohibits this arrangement any more than it would prevent the commissioner and an insurance company from retaining on an independent basis the same attorney, data processing firm, or bricklayer.

Mr. Justice JONES joins in this concurring opinion.

DISSENTING OPINION BY MR. JUSTICE COHEN:

I contend and the majority concedes that the actuary employed by the insurance department is in a position of conflict of interest. I believe that the evidence of record does not adequately dispose of the taint that accompanies such a conflict. Since we cannot isolate the effect of this conflict to determine the good from the bad, it follows that we cannot say, as does the majority, that this conflict was harmless. Hence I would vacate these proceedings so that a hearing without this conflict can be inaugurated.