## Annie Bell Travis *v.* Department of Public Welfare, Commonwealth of Pennsylvania.

Argued March 11, 1971, before Judges CRUMLISH, JR., MANDERINO, and MENCER, sitting as a panel of three.

*Tom M. Lytton,* with him *Neighborhood Legal Services Association,* for appellant.

*Sidney V. Blecker,* Assistant Attorney General, with him *Marx S. Leopold,* General Counsel, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, May 10, 1971:

Annie Bell Travis and her six children reside at 344 Violet Way, Pittsburgh, Pennsylvania. In 1966, after her husband passed away, she applied for Social Security survivor's benefits for her children. In September, 1966, the children were found eligible and received a Social Security lump sum benefit. From that date to the present the children receive monthly Social Security benefits. The entire family, including Annie Bell Travis, also receives a welfare supplementary grant.

At or about the time the Social Security lump sum benefit was paid, Annie Bell Travis and her caseworker discussed the possibility of retaining this lump sum benefit and placing it in trust, to be applied toward the future educational costs of one or more of her children. By letter dated September 19, 1966, the caseworker wrote Mrs. Travis the following: "I spoke with my supervisor about saving some of the money for the children's high school. This can only be done for schooling after high school. You must give a certain school on the forms, it must be recommended by the high school, and approved by the State."

Nothing further was done by anyone until three years later when Mrs. Travis went to the Allegheny County Board of Assistance and requested a written explanation of her assistance grant. This request was fulfilled by a letter dated September 10, 1969. Two days later Mrs. Travis filed an appeal from the determination of her assistance grant, asserting that the Department of Public Assistance had made a mistake in determining the amount of the cash grant to which she was entitled. Mrs. Travis requested a State Hearing which was held on December 16, 1969.

On March 26, 1970, Mr. Stanley A. Miller, Secretary of Public Welfare for the Commonwealth of Pennsyl-

vania, notified Mrs. Travis by letter of the decision of his department relative to her appeal of September 10, 1969. The letter indicated a rejection of Mrs. Travis's contention and constituted a dismissal of her appeal. The reasons for this decision were stated in the letter to be: "Those [Departmental] regulations provided for the setting aside of funds for future educational needs only if certain conditions were met, for example, the existence of a specific plan for the child's future education and a plan for setting aside the funds. The evidence presented at the hearing indicates that there had been some discussion with the County Assistance Office about reserving income for future education needs of your children, but there was no evidence introduced to indicate that you presented a plan for the future educational needs of your daughters or a plan for setting aside income to meet such needs. In regard to the second issue the major premise on which the reserve of income for education is no longer permitted is that it is not the proper function of the Department of Welfare to make provision for future educational needs because there are other established agencies to help persons get education and training." Mrs. Travis has appealed from this decision.

In September, 1966, the Department of Public Welfare had in effect Regulation 3231.1, entitled "Income and Personal Property Reserved for Education or Training". The provisions of this regulation were as follows: "With prior approval from State Office, a client may retain certain resources for identified future needs of a child under 21 years of age, provided that: (a) There is a well-defined and specific plan for the child's education or training which for implementation requires a current or future expenditure of funds not available from other sources. (b) The plan is financially feasible in terms of the stability of the resource

and the likelihood of its continuation. (c) The plan for the child's education or training is realistic in terms of his abilities and is recommended or endorsed by an appropriate school or training authority. (d) The amount of the actual or proposed expenditure is reasonable in relation to the intended purpose. (e) The parent(s) or other relative(s) responsible for the child's care and control has the ability to follow the plan. (f) The County Office's casework plan includes a review at least every three months to determine whether or not the plan is being followed. (g) The appropriate conditions for reserving the resource(s) are met." This regulation was discontinued by the Department of Public Welfare on December 4, 1968, which was more than ten months before Mrs. Travis filed her appeal on September 12, 1969.

Mrs. Travis did not submit a plan in accordance with the regulation and naturally the State office did not approve or disapprove the retention of any resources for the education or training of her children. However, it is her contention, and the basis of her appeal, that it was the duty and obligation of the County Board of Assistance to bring forth a specific educational plan for her children. Mrs. Travis asserts that the obligation to identify family needs, and provide each client with the services he is eligible for, rests primarily on the County Board and not the recipient. This assertion implies that once the County Board knew of Mrs. Travis's interest to consider the provisions of Regulation 3231.1, it became its obligation to maximize assistance. Mrs. Travis contends that this is inherent from Regulation 3511.2 of the Pennsylvania Public Assistance Manual which states that "[t]he County Office is responsible for giving to every person who asks for help the service appropriate to the Department's function."

We cannot agree with this analysis and must therefore dismiss this appeal. We find no breach of duty by the County Board of Assistance in the instant case. The caseworker, by her letter of September 19, 1966, explained that the money could only be retained for schooling after high school; further, that forms for state approval must be filed with a recommendation obtained from the high school. Mrs. Travis does not contend that she was misled, deceived, or that the County Board dealt with her in bad faith. No authority has been invited to our attention that would place any duty on the County Board to make the plan or obtain approval of it. We do not consider the general language of the regulations that the County Board "provide each client with the services he is eligible for, needs and desires" to require more than informing persons, asking for financial help, of the services and benefits available from the Department of Public Welfare and other agencies, and assisting in the preparation of any necessary forms or applications to obtain such services and benefits.

Under our system of separation of powers, the courts may not set aside administrative actions in the absence of bad faith, fraud, capricious action or abuse of power. *Harrington v. Tate,* 435 Pa. 176, 254 A. 2d 622 (1969). In determining whether the Regulations of the Department of Public Welfare, or the interpretation of them, violate some right of a potential recipient of benefits, it must be remembered that receiving public assistance is not a constitutional right nor a property right of the recipient. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969).

As to eligibility for, and amount of, public assistance, the Pennsylvania Public Welfare Code provides that the Department of Public Welfare shall establish rules, regulations and standards consistent with the

law as to eligibility for assistance and as to its nature and extent. Act of June 13, 1967, P. L.    , No. 21, Art. 4, §403, 62 P.S. §403. The establishment of rules, regulations and standards involves agency discretion and Pennsylvania courts will not review administrative discretion in the absence of fraud, bad faith or abuse of power. The scope of review of the action of an administrative agency is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 109 A. 2d 331 (1954), appeal dismissed, 350 U.S. 806, 76 S. Ct. 68, 100 L. Ed. 724 (1955). We find no such abuse of discretion in this case.

In *Dandridge v. Williams*, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491, reh. den., 398 U.S. 914, 90 S. Ct. 1684, 26 L. Ed. 2d 80 (1970), the United States Supreme Court pointed out that the federal courts would be reluctant to interfere with the decisions of state agencies as to how welfare money should be distributed among welfare recipients. Also, the United States Supreme Court has held that state laws or regulations involving public assistance will not be invalidated on due process grounds or on any other constitutional grounds where they involve policy judgments by those responsible for the administration of assistance programs. See *Snell v. Wyman*, 281 F. Supp. 853 (1968), affirmed, 393 U.S. 323, 89 S. Ct. 553, 21 L. Ed. 2d 511 (1969).

The conclusion must be reached that, in the absence of bad faith, fraud or abuse, the Department of Public Welfare may exercise its discretion in administering all of its public assistance programs to achieve the most equitable distribution of benefits for those in need. Here, in addition to there being no evidence of bad

faith, fraud or abuse, there was simply no compliance by Mrs. Travis with the provisions of the regulation in question and therefore no evidence in the record to support her claim of eligibility for the benefit she seeks. Further, we find no authority, statute or case that would create a duty on the County Board of Public Assistance to do more than was done for Mrs. Travis and her children in this case.

This appeal is taken pursuant to the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, and Section 44, 71 P.S. §1710.44, provides that ". . . [a]fter hearing, the court shall affirm the adjudication unless it shall find . . . that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, 345 Pa. 398, 29 A. 2d 90 (1942). In *Pennsylvania Insurance Department v. Johnson*, 211 Pa. Superior Ct. 138, 142, 238 A. 2d 23, 25 (1967), it was stated: "The reviewing court should not interfere where an administrative agency is clothed with discretion in the discharge of its duty unless the record clearly establishes that there has been a violation of positive law or an arbitrary, capricious or unreasonable determination due to the absence of substantive evidence to support its findings." We find no absence of substantive evidence here.

Accordingly, we enter the following

### ORDER

AND NOW, May 10, 1971, the appeal of Annie Bell Travis from the decision of the Secretary of Public Welfare refusing the exclusion of her children's Social Security benefits for cash grant determination and for re-

tention toward future educational needs of the children is dismissed.

---

CONCURRING OPINION BY JUDGE CRUMLISH, JR.:

I am in agreement with Judge MENCER's conclusion which reads as follows: ". . . [I]n the absence of bad faith, fraud or abuse the Department of Public Welfare may exercise its discretion in administering all of its public assistance programs to achieve the most equitable distribution of benefits for those in need. Here, in addition to there being no evidence of bad faith, fraud or abuse, there was simply no compliance by Mrs. Travis with the provisions of the regulation in question and, therefore, no evidence in the record to support her claim of eligibility for the benefit she seeks. Further, we find no authority, statute or case that would create a duty on the County Board of Public Assistance to do more than was done for Mrs. Travis and her children in this case." It is clear that there was no *legal* duty to perform the functions requested by Mrs. Travis and her claim was properly dismissed. However, I am constrained to go beyond the legal disposition of this claim and make mention of the moral and practical ramifications involved herein.

I have found that all too often in the administration of the Commonwealth's programs designed to benefit its citizens, the needs of these beneficiaries give way to the strict adherence to agency policies and guidelines. The very people engaged to aid the disadvantaged are hindered in the best performance of their duties by the unnecessary rigidity of the decision making apparatus inherent in the American bureaucracy. Governments seem afraid to allow their grass roots employees to deal with people *as people* with individual needs and problems. This seems especially true in the area of public assistance.

The implementation of public welfare systems in this country, including that in Pennsylvania, seem premised on the philosophy that each applicant should be channeled through to receive any *"hand-out"* to which he or she can prove *entitlement.* This loses sight of the fact that welfare is not a "hand-out" system but a program designed to *rehabilitate* or maintain those persons not able to rehabilitate or maintain themselves. By doing this, we hope to enhance the public welfare of this *entire* nation.

But rehabilitation and economic and social stability cannot be channeled through rigid programs. It must be the purpose of every welfare agency in this country to attack and solve the problems of every disadvantaged *individual.* They must not hide behind the facade of policy or power structure to avoid helping any individual reaching for help.

Admittedly, the County Board of Public Assistance had no legal duty to aid Mrs. Travis in her attempt to qualify for educational trust benefits. It had no duty to see that her application was properly processed to finality. But it should have *wanted* to see her qualify, if at all possible. It should have *wanted* to help in Mrs. Travis' own individual and unique situation. The Board should not erect prohibitive safeguards against the misappropriation of welfare funds by strict regulation of their availability but rather should tailor procedure and funds to the needs of the individual. This must necessarily entail, therefore, the painstaking effort of understanding in solving the problems of *every individual* recipient.

While the courts of this Commonwealth are powerless to compel thoughtful administration of the state's public assistance programs, it is not powerless to speak out for the welfare of its citizens. Thus, while this claim cannot find a legal solution to the problem, it

does place the problem once again before the administrators who are capable of solving it in an effort to maintain the high degree of professionalism of which they are so proud.

I concur.

---

DISSENTING OPINION BY JUDGE MANDERINO:

I dissent. By this decision reached today, this court has gone one step further in perpetuating the idea that public assistance is little more than a sophisticated term for the system of the dole.

Annie Bell Travis has lived most of her life on government welfare grants. In an attempt to procure for her children what she considered to be a better life, Mrs. Travis spoke with her caseworker about retaining a Social Security lump sum benefit received by her children for their future educational needs. This was in accord with a plan of the Department of Public Welfare which provided that funds for future educational needs could be set aside if among other things a specific plan for the child's future education and a plan for the setting aside of the funds were in existence.

It is admitted that Mrs. Travis herself, a woman of limited formal education, never submitted a specific plan to the County Board of Public Assistance. However, it is uncontradicted that she spoke with her caseworker about such a plan and that the caseworker knew of the Social Security lump sum benefit and of Mrs. Travis' desire to use this money to implement the plan. It is inconceivable that the Department of Public Welfare should now deny Mrs. Travis the chance to insure the future of her children because she failed to submit a detailed and specific plan for their future educational needs.

The spirit of what function public assistance is to perform is set out in Regulation 3511.2 of the Penn-

sylvania Public Assistance Manual which states that: "The County Office is responsible for giving to every person who asks for help the service appropriate to the Department's function." Mrs. Travis was asking for help and instead of receiving "appropriate services", she received a refusal based on technical requirements involving paperwork which Mrs. Travis could not possibly have completed on her own. The Department had a legal duty to assist Annie Bell Travis in receiving the "educational benefit" for her children in the same manner that they would have a legal duty to provide food if the children were starving, without requiring the recipient to consume bureaucratic red tape.

I would reverse the decision and order the establishment of the educational fund in accordance with applicable requirements.