## Crammer *v.* Department of Public Welfare.

Argued April 21, 1971, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three. Re-argued November 5, 1971, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, and ROGERS.

*Eugene F. Zenobi,* Tri-County Legal Services, for appellant.

*Sidney V. Blecker,* Assistant Attorney General, with him *Marx S. Leopold,* General Council, and *J. Shane Creamer,* Attorney General, for appellee.

PER CURIAM OPINION FILED November 19, 1971:

After argument before a panel and reargument before the Court en banc, the Court being equally divided, the adjudication is hereby affirmed.

---

OPINION OF PRESIDENT JUDGE BOWMAN IN SUPPORT OF AFFIRMING ADJUDICATION OF DEPARTMENT OF WELFARE:

The Federal statutory court convened in *Fullington v. Shea*, 320 F. Supp. 500 (D. Colo. 1970) in my opinion correctly interpreted the Federal statutory law involved in this appeal, and it is not here disputed that the Department's controlling regulation is consistent with the applicable Pennsylvania statutory law.

Judges WILKINSON and ROGERS join in this opinion.

---

OPINION OF JUDGE CRUMLISH, JR., IN SUPPORT OF REVERSAL:

Edna F. Crammer, appellant, is just one of a multitude of Social Security payment recipients all across the United States who have experienced an unfortunate and unexpected effect of a nationwide increase in the allotment of Social Security benefits. Prior to the increase, appellant's Social Security monthly benefits, her sole income, were less than the maximum monthly income allowance of the Pennsylvania Department of Public Welfare. Therefore, she was classified as "categorically needy" and was eligible to receive medical benefits including the payment of costs for drugs. This care was provided by the State under the mandate of the Social Security Act, 42 U.S.C. §§301 et seq. However when the Social Security payments increased, appellant's income became greater than the permissible maximum for public assistance, and she then received medical benefits under an optional state plan which does not provide for medicinal payments. As a result, instead of receiving $95.00 per month and having her

drugs paid for, she was receiving $115.00 per month and paying out of this allotment an average of $60.00 per month for drugs.

The Social Security Act, *supra,* provides that the states, in conjunction with the Federal government, will provide medical care to the "categorically needy." This group includes those persons whose incomes are below the maximum welfare level. A second plan, optional with the states, provides medical care for persons with incomes above that level. Pennsylvania has adopted the second plan *but* medicinal payments are not included as in the required plan.

Appellant urges us to direct the Department to reinstate her under the all encompassing plan, advancing four arguments in support of her position.

First, it is suggested that the Social Security Act, Section 1396a(a)(17)(D) mandates that tests of eligibility in state programs allow for flexibility of income caused by heavy medical expenses. This is the so-called "spend-down" test in which necessary medical expenses would be deducted from income prior to determining eligibility.

Second, appellant argues that the Department of Public Welfare Manual mandates that her drug expenses be included in living expenses when computing whether her living expenses exceed her income for eligibility as "categorically needy" for non-money payments.

Third, appellant contends that the classification of "categorically needy" and "medically needy" based upon income is unreasonable and arbitrary in contravention of her right of equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

Finally, she says that the refusal of the State to grant her access to her federally guaranteed rights under the Social Security Act, as alleged in her first argu-

ment, denies her due process of law in contravention of the Fourteenth Amendment.

The first issue raised by appellant was discussed at length by the United States District Court for the District of Colorado in *Fullington v. Shea,* 320 F. Supp. 500 (D. Colo. 1970), a case involving similar facts.* The following preliminary discussion by that court will help to draw the issues into focus: "Title XIX of the Social Security Act, 42 U.S.C. §1396 ff., creates a scheme of medical assistance for the poor (as opposed to Medicaire, which is not restricted to the poor). The federal government shares with the states some of the costs of medical assistance if the state decides (at its option) to participate in Medicaid. If it so decides, the state is required by §1396a(a)(10) to provide medical assistance to those receiving welfare benefits under one of the state's federally aided public assistance programs for the aged, blind, totally and permanently disabled, and families with dependent children ("categorically needy"). States also have the option of including certain other groups—mainly those who but for "excessive incomes" (income or resources exceed state-set income levels for public assistance) would fit within one of the above categories ("medically needy")—in their Medicaid programs. . . .

## "IV

### CONSTRUCTION OF THE STATUTES

"In support of their contention that they are entitled to coverage under the [Pennsylvania] Medicaid program, plaintiffs argue that the applicable federal statutes *require* a state to extend coverage to them, and

---

* The only factual difference between these cases is that Colorado does not provide a "medical needy" plan. Therefore, the recipients in Colorado were cut off from all medical aid by the Social Security benefits increase. This difference, however, does not affect the legal questions before us.

that the state statute (and regulations) are therefore out of harmony with the federal scheme. They seek a determination of this Court holding the state statutory scheme invalid insofar as it fails to extend its benefits to so-called medically indigent persons like themselves. Plaintiffs' main reliance is on the provisions of 42 U.S.C. §1396a(a)(17).[1]

"Subsection (17) requires the state to include reasonable standards for eligibility for Medicaid. These must be comparable for all groups, but may differ with respect to income level except in relation to the categorical recipients. It requires that the state count or consider only available income disregarding that income which is not received. The second part, which is often called the 'flexible income' or 'spend-down' provision, requires the state to take into account in determining eligibility the costs 'incurred for medical care or for any other type of remedial care recognized under State law.'

"Plaintiffs argue that they are eligible for inclusion in Medicaid because their medical expenses are so large that their available income is limited, and that if their net income rather than their gross income is considered as the cut-off standard their eligibility is estab-

---

"[1] A state plan for medical assistance must—include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan who are not receiving aid or assistance under the State's plan approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan . . . and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any other type of remedial care recognized under State law."

lished.  They point out that there is no limiting provision in Sub-section (17) as to its scope and hence the state *must* observe this provision in determining their eligibility.[2]

"It is true that Subsection (17) appears to be generous and promising to plaintiffs.  The difficulty from this standpoint is that it does not stand alone and it must be read in conjunction with a preceding companion provision, 42 U.S.C. §1396a(a)(10)."[3]

---

"[2] Plaintiffs do not argue that the state cannot establish a cut-off line to establish eligibility, nor do they argue that if the 'medically needy' are covered that the cut-off line must be higher than the level established by the state as the 'minimum level of subsistence'. If, for example, the state recognized $120.00 as the 'minimum level of subsistence' for the purposes of establishing eligibilty for old age pensions, plaintiffs argue that the state could still recognize $120.00 as the level needed for subsistence, but that they must include individuals (for the purposes of Medicaid eligibility) whose 'gross income' exceeds $120.00, but whose 'net income' (gross income less medical costs) is below that level."

"[3] It requires a state plan to: (10) provide for making medical assistance available to all individuals receiving aid or assistance under State plans approved under subchapters I, X, XIV, and XVI of this chapter, and part A of subchapter IV of this chapter; and—

"(A) provide that the medical assistance made available to individuals receiving aid or assistance under any such State plan—

"(i) shall not be less in amount, duration or scope than the medical assistance made available to individuals receiving aid or assistance under any other such State plan, and

"(ii) shall not be less in amount, duration, or scope than the medical or remedial care and services made available to individuals not receiving aid or assistance under any such plan; and

"(B) if medical or remedial care and services are included for any group of individuals *who are not receiving aid or assistance under any such State plan and who do not meet the income and resources requirements of the one of such State plans which is appropriate*, as determined in accordance with standards prescribed by the Secretary, provide—

"(i) for making medical or remedial care and services available to all individuals who would, if needy, be eligible for aid or assistance under any such State plan and who have insufficient (as

It is at this point, however, where I must disagree with the analysis of the District Court. It interpreted §1396a(a)(10)(B) as classifying the medical aid for those not receiving welfare payments as aid to the "medically needy". This interpretation would deny appellant relief. I reach a different conclusion with respect to §1396a(a)(10)(B). That section provides "medically needy" assistance at the State's option for individuals "who are not receiving aid or assistance under any such State plan [welfare recipients] and who do not meet the income and resources requirement of the one of such State plans which is appropriate. . . ." When read in conjunction with §1396a(a)(17), subsection (10) includes as "categorically needy" for *Medicaid* purposes, those persons actually receiving welfare benefits *and those persons who, under the flexible income test of subsection (17), meet the income and resources requirements of the "categorically needy" plan.*

This interpretation is supported by the legislative history of the Social Security Act. In Title XIX, U.S. C.C.A.N. 89th Congress, 1st Sess. (1965), it is stated:

"The bill also contains a provision designed to correct one of the weaknesses identified in the medical assistance for the aged program. Under the current provisions of Federal law, some States have enacted programs which contain a cut-off point on income which determines the financial eligibility of the individual. Thus, an individual with an income just under the specified limit may qualify for all of the aid provid-

---

determined in accordance with comparable standards) income and resources to meet the costs of necessary medical or remedial care and services, and

"(ii) that the medical or remedial care and services made available to all individuals not receiving aid or assistance under any such State plan shall be equal in amount, duration, and scope. . . . ." (Emphasis added.) 320 F. Supp. at 503-05.

ed under the State plan. Individuals, however, whose income exceeds the limitation adopted by the State are found ineligible for the medical assistance provided under the State plan even though the excess of the individual's income may be small when compared with the cost of medical care needed. In order that all States shall be flexible in consideration of an individual's income, the committee bill requires that the State's standards for determining eligibility for and *extent of* medical assistance shall take into account, except to the extent prescribed by the Secretary, the cost—whether in the form of insurance premiums or otherwise—incurred for medical care or any other type of remedial care recognized under State law. Thus, before an individual is found ineligible for all or part of the cost of his medical needs, the State must be sure that the income of the individual has been measured in terms of both the State's allowance for basic maintenance needs and the cost of the medical care he requires." (Emphasis added.) If public assistance benefits are to be distributed according to need, appellant certainly qualifies. Further commentary on Title XIX in U.S.C.C.A.N. 89th Cong., 1st Sess. (1965) at p. 1951 provides: "Improvements would be effectuated in the program for the needy elderly by requiring that the States must provide a flexible income test which takes into account medical expenses and does not provide rigid income standards which arbitrarily deny assistance to people with large medical bills."

In addition to the ample legislative history upon which I base my position, I must add one further point. The purpose of the welfare system in this nation as I view it is to provide assistance to those in need and by doing so to improve the public welfare. This is the clear intent of enacted welfare legislation.

These enactments should be interpreted in such a way as to carry out the manifestation of the Legisla-

ture. To do otherwise would be to restrict the stated purposes of the Congress and thus hinder rather than help our elderly or indigent citizens in their quest for physical or mental survival. In *Travis v. Department of Public Welfare*, 2 Pa. Commonwealth Ct. 110, 277 A. 2d 171 (1971), this Court refused to instruct the Department to provide trust fund services to a needy applicant. Under the facts of that case, we could not find a *legal* duty which would require such assistance. However, in the instant case, I distinguish *Travis* by finding a duty to assist appellant based upon the statutory construction of the Social Security Act.* Accordingly, I would direct the Department to grant the relief sought by appellant.

Judge KRAMER joins in the Opinion.

---

* Aside from my basic finding as to appellant's first issue, I would hold that issues two and three as raised by her would be insufficient to sustain a decision in her favor. The second issue is controlled by Department of Public Welfare Regulation 3212-32 which excludes drugs as a special need item. Issue three was properly disposed of by the Colorado District Court in *Fullington v. Shea, supra*, 320 F. Supp. at 506-07. Because of my position favorable to appellant on the first issue, I need not and will not comment upon the merits of appellant's fourth contention.