Ray E. **FULLINGTON,** Floyd Israel, Gladys Jensen, and Jose Martinez, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Con F. **SHEA,** individually and as Executive Director of the Department of Social Services, State of Colorado, Charline Birkins, individually and as Director of the Colorado State Division of Public Welfare, Peter Sumac, Ernest J. Bloedorn, Manual M. Diaz, John L. Haley, James A. Henderson, Gail F. Ouren, Henry J. Tupper, Willie E. Anthony, James H. Vincent, individually and as constituting the Colorado State Board of Social Services, Defendants.

Lola B. **HOWARD,** Mabel Beebe, Charles J. Pennock, Benjamin Bernstein, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Con F. **SHEA,** individually and as Executive Director of the Department of Social Services, State of Colorado, Charline Birkins, individually and as Director of the Colorado State Division of Public Welfare, Peter Sumac, Ernest J. Bloedorn, Manual M. Diaz, John L. Haley, James A. Henderson, Gail F. Ouren, Henry J. Tupper, Willie E. Anthony, James H. Vincent, individually and as constituting the Colorado State Board of Social Services, Defendants.

Civ. A. Nos. C–2469, C–2474.

United States District Court,
D. Colorado.

Dec. 9, 1970.

William D. Prakken, Colorado Rural Legal Services, Inc., Boulder, Colo., A. Andrew Borg, Colorado Rural Legal Services, Inc., Greeley, Colo., Tom Holland, Colorado Rural Legal Services, Inc., La Junta, Colo., Gary S. Goodpaster, Michael Krassner, Colorado Rural Legal Services, Inc., Grand Junction, Colo., Robert Borsody, Center on Social Welfare Policy and Law, New York City, Laurens H. Silver, National Legal Program on Health Problems of the Poor, Los Angeles, Cal., Jean E. Dubofsky, Colorado Rural Legal Services, Inc., Boulder, Colo., of counsel, for Fullington and others.

James L. Treece, U. S. Atty., for District of Colorado, Denver, Colo., amicus curiae.

Richard F. Hennessey, Legal Aid Society of Metropolitan Denver, Denver, Colo., Terrance R. Kelly, East Denver Legal Services, Denver, Colo., Robert P. Borsody, Center on Social Welfare Policy and Law, New York City, Malvina H. Guggenheim, Laurens H. Silver, National Legal Program on Health Problems of the Poor, Los Angeles, Cal., of counsel, for Shea and others.

William Pultusker, Lynne Hufnagel, Legal Aid Society of Metropolitan Denver, Denver, Colo., student counsel.

Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., by Douglas D. Doane, Sp. Asst. Atty. Gen., Denver, Colo., for defendants.

Before HILL, Circuit Judge, and KERR and DOYLE, District Judges.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This case raises the basic question whether Colorado can limit eligibility for medical aid (Medicaid) to those who qualify for various categorical public assistance programs, e. g., old age pension. Specifically, the question is whether Colorado regulations, which make eligible for Medicaid those who qualify for Old Age Pension or Aid to the Needy Disabled assistance but not to those whose income exceeds the levels set for each, are valid first under federal statutes and regulations and, secondly, as a matter of constitutional law.

### I

### NATURE OF RELIEF PRAYED FOR

The suit seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure declaring the said statutes and related statutes, regulations, rules, policies and practices invalid and unconstitutional insofar as they require or permit defendants to include as resources for the purposes of determining eligibility for state welfare categorical assistance and Medicaid any income attributable to a Social Security increase and to disregard medical expenses in determining eligibility for Medicaid. Plaintiffs also demand preliminary and permanent injunctive relief to prevent defendants from enforcing Colo.Rev.Stat. §§ 119–12–3 (10) and 119–12–4. They also request judgments for damages in the amount of welfare and Medicaid benefits denied since the termination of their coverage.

### II

### JURISDICTION

Jurisdiction is allegedly founded on 28 U.S.C. § 1343 and 42 U.S.C. § 1983, this being an action for declaratory and injunctive relief to redress the deprivation under color of law of rights, privileges and immunities secured to plaintiffs by the Constitution and laws of the United States.

Because plaintiffs seek to enjoin a state statute on constitutional grounds, a three-judge court has been convened pursuant to 28 U.S.C. §§ 2281 and 2284. For § 2281 to apply, a state statute or administrative order must be challenged, a state officer must be a party defendant, injunctive relief must be sought, and there must be a claim that (and a "substantial" question regarding) the statute or order is contrary to the federal Constitution.

The constitutional issue posed is on its face a "substantial constitutional" claim. Hence, the scope of the Court's jurisdiction includes the statutory construction question since it is factually embraced within the constitutional issue. Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960) held that the assertion of non-constitutional claims in conjunction with a non-frivolous constitutional attack was sufficient to bring the case within the ambit of § 2281, and that a three-judge court could adjudicate all the claims.

### III

### DESCRIPTION OF PLAINTIFFS AND MEDICAID

The plaintiff Lola B. Howard receives $134.90 per month which derives from Old Age Survivors and Disability Insurance benefits. This exceeds the minimum maintenance needs established for her eligibility category by the Denver Department of Welfare. Hence, she is not eligible for Medicaid under the rele-

vant regulations. On the other hand, her necessary monthly expenses, including oxygen tanks, equipment accompanying tanks and prescribed medication, total $62.50. She maintains that her recurring medical expenses are approximately $80.00 per month. This plaintiff appealed the denial of her application for Medicaid to the State Board of Social Services which affirmed the denial.

The group of plaintiffs represented by Fullington who have brought suit in Case No. C–2469 had received Old Age Pension up until the increase in Social Security benefits, which brought their Social Security benefits above the level of Old Age Pension. When this happened, these plaintiffs were cut off of the grant of Old Age Pension, and this automatically cut off their eligibility for Medicaid benefits. The evidence shows that these plaintiffs have recurring medical expenses ranging from $26.00 to $60.00 per month. Each of the plaintiffs, with one exception, had some kind of hearing prior to the decision which is here complained of. It does not appear that their appeals have been disposed of. The record indicates that each plaintiff suffered a net loss in benefits ranging from $17.00 to $55.00.

Medicare differs from Medicaid in that it is an insurance program which provides hospitalization and other benefits for Social Security recipients. The cost of premiums is $5.50 per month, deductibles and cost sharing (only a per cent payment of medical expenses made by the government and only to a set limit) are present with Medicare plans. Medicaid, on the other hand (at least in Colorado where "categorically needy" are involved), contains none of these limitations. Medicare benefits—unlike Medicaid—do not cover self-administration prescription drugs.

Title XIX of the Social Security Act, 42 U.S.C. § 1396 ff., creates a scheme of medical assistance for the poor (as opposed to Medicare, which is not restricted to the poor). The federal government shares with the states some of the costs of medical assistance if the state decides (at its option) to participate in Medicaid. If it. so decides, the state is required by § 1396a(a) (10) to provide medical assistance to those receiving welfare benefits under one of the state's federally aided public assistance programs for the aged, blind, totally and permanently disabled, and families with dependent children ("categorically needy"). States also have the option of including certain other groups—mainly those who but for "excessive income" (income or resources exceed state-set income levels for public assistance) would fit within one of the above categories ("medically needy")—in their Medicaid programs.

Colorado has elected to cover only those who receive aid under one of its public assistance programs. Colo.Rev. Stat. §§ 119–12–3(10) and 119–12–4. In the computation of need for welfare purposes, medical expenses (other than for repair of glasses or hearing aids, purchase of special clothes and special diets, Colorado Dept. of Public Welfare, Vol. IV, Supp. A, 4323.42) are not allowed.

There are two fundamental questions presented for consideration: (1) Whether Colorado has failed to follow out the federal statutory scheme—this reduces to whether the federal laws relative to the "medically indigent" are mandatory or optional; (2) whether the failure of Colorado to extend Medicaid to the "medically indigent" while at the same time extending it to the "categorical" recipients constitutes an invalid discrimination violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

## IV

### CONSTRUCTION OF THE STATUTES

In support of their contention that they are entitled to coverage under the Colorado Medicaid program, plaintiffs argue that the applicable federal statutes *require* a state to extend coverage to them, and that the state statute (and regulations) are therefore out of har-

mony with the federal scheme. They seek a determination of this Court holding the state statutory scheme invalid insofar as it fails to extend its benefits to so-called medically indigent persons like themselves. Plaintiffs' main reliance is on the provisions of 42 U.S.C. § 1396a(a) (17).[1]

Subsection (17) requires the state to include reasonable standards for eligibility for Medicaid. These must be comparable for all groups, but may differ with respect to income level except in relation to the categorical recipients. It requires that the state count or consider only available income disregarding that income which is not received. The second part, which is often called the "flexible income" or "spend-down" provision, requires the state to take into account in determining eligibility the costs "incurred for medical care or for any other type of remedial care recognized under State law."

Plaintiffs argue that they are eligible for inclusion in Medicaid because their medical expenses are so large that their available income is limited, and that if their net income rather than their gross income is considered as the cut-off standard their eligibility is established. They point out that there is no limiting provision in Subsection (17) as to its scope and hence the state *must* observe this provision in determining their eligibility.[2]

■ It is true that Subsection (17) appears to be generous and promising to plaintiffs. The difficulty from this standpoint is that it does not stand alone and it must be read in conjunction with a preceding companion provision, 42 U.S. C. § 1396a(a) (10).[3] Subsection (10)

1. A State plan for medical assistance must —include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan who are not receiving aid or assistance under the State's plan approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan * * * and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any other type of remedial care recognized under State law.

2. Plaintiffs do not argue that the state cannot establish a cut-off line to establish eligibility, nor do they argue that if the "medically needy" are covered that the cut-off line must be higher than the level established by the state as the "minimum level of subsistence." If, for example, the state recognized $120.00 as the "minimum level of subsistence" for the purposes of establishing eligibility for old age pensions, plaintiffs argue that the state could still recognize $120.00 as the level needed for subsistence, but that they must

include individuals (for the purposes of Medicaid eligibility) whose "gross income" exceeds $120.00, but whose "net income" (gross income less medical costs) is below that level.

3. It requires a state plan to: (10) provide for making medical assistance available to all individuals receiving aid or assistance under State plans approved under subchapters I, X, XIV, and XVI of this chapter, and part A of subchapter IV of this chapter; and—

(A) provide that the medical assistance made available to individuals receiving aid or assistance under any such State plan—

(i) shall not be less in amount, duration, or scope than the medical assistance made available to individuals receiving aid or assistance under any other such State plan, and

(ii) shall not be less in amount, duration, or scope than the medical or remedial care and services made available to individuals not receiving aid or assistance under any such plan; and

(B) if medical or remedial care and services are included for any group of individuals who are not receiving aid or assistance under any such State plan and who do not meet the income and resources requirements of the one of such State plans which is appropriate, as determined in accordance with standards prescribed by the Secretary, provide—

has two parts. The first part (A) of it requires that if the state participates in Medicaid, it *must* make Medicaid available to all persons who receive categorical assistance. These groups are called the "categorically needy" or "categorically indigent." This must be equal to medical assistance extended to persons other than the "categorically needy." The second part of (10) contains the language which is significant in the present context. It declares that *if* medical assistance is provided for the "medically needy", definite requirements must be observed. It is thus clear that coverage of the "medically needy" is optional with the states. Colorado has not chosen to cover this group of people and the statute does not demand that they do so. If there were such a plan, the plaintiffs' argument that the cut-off point could only be established after medical expenses had been deducted from net income would have merit. As it is the Congress, by requiring that the "categorically needy" be included, and by leaving coverage of the "medically needy" optional, has sufficiently manifested its intent. As we view it, therefore, Colorado in choosing not to bring the "medically needy" into Medicaid is not in violation of federal law.

Examination of the legislative history of Section 1396a supports the construction which we have given to Subsections (10) and (17). The Senate Report states:

> Medical assistance under Title XIX must be made available to all individuals receiving money payments under these [categorical assistance] programs * * *.

> (i) for making medical or remedial care and services available to all individuals who would, if needy, be eligible for aid or assistance under any such State plan and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical or remedial care and services, and

> (ii) that the medical or remedial care and services made available to all individuals not receiving aid or assistance under any such State plan shall

Inclusion of the medically indigent aged not on the cash assistance rolls would be optional with the states but if they are included * * *.

* * * a State plan to be approved must include provision for medical assistance to all individuals receiving aid [under state categorical assistance programs] * * *. It is only if this group is provided for that states may include medical assistance to the less needy.

The bill provides furthermore that as States extend their programs to include assistance for persons who come within the various categories of assistance except that their income and resources are sufficient to meet their needs for maintenance, the medical assistance given such individuals shall * * *.

Under the bill, if a State extends the program to those persons not receiving assistance under titles * * *.[4]

The Department of Health, Education and Welfare Handbook, D–4020 construes the statutes in the same manner that we have, and it would appear that the handbook is entitled to be regarded as regulations.[5]

We cannot, of course, ignore the clear thrust of Section (10). Hence, based on the analysis and the evidence (of Congressional and Department intent) we are constrained to hold that Congress has not required Colorado or any other state to include the medically indigent in a Medicaid program, and that the state's adoption or failure to adopt such a program was optional. The requested relief

> be equal in amount, duration, and scope. * * *

4. S.Rep. 404, 89th Cong., 1st Sess. (1965), U.S.Code, Congressional and Administrative News 1943, at 1950 and 2017 (1965).

5. See, e.g., Rosado v. Wyman, 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 317, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Note, Federal Judicial Review of State Welfare Practices, 1970 Colum.L. Rev. 84, 110–11.

on this ground must, therefore, be denied.

## V

## THE ALLEGED VIOLATION OF THE CONSTITUTION

Plaintiffs next argue that the failure of Colorado to adopt a program which includes the "medically indigent" while at the same time providing Medicaid to the "categorically needy" creates an arbitrary classification—one which constitutes invidious discrimination. Their argument is that their situation is similar to those who receive Medicaid. The latter receive medical benefits so that they have enough income—consistent with a minimum subsistence level—to meet their other consumption needs. On the other hand, plaintiffs' income after medical expenses is below the subsistence level.

Defendants urge that Colorado's income classification, which doesn't take medical needs into account, should be judged by the so-called "any rational basis" test. See McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), wherein the Supreme Court said:

A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

Plaintiffs contend that the matter must be determined with reference to the "compelling state interest" test because of a fundamental right, that to food, shelter and necessities. Shapiro v. Thompson, 394 U.S. 618, 627, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

The Supreme Court in its relatively recent decision in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), has dispelled any doubt which formerly existed as to which of the above tests is applicable in facts like these. This case involved the validity of Maryland's program for Aid to Dependent Children. The Maryland law fixed an overall maximum of $250.00 regardless of the number of children in the family. Up to a maximum of four the amount was dependent on the number of children. The Court noted that in the area of state economic regulation the legislation is to be upheld "if the classification has some 'reasonable basis.'" The Court added that

\* \* \* it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." \* \* \* 6

In the case before us there are no racial overtones or other factors capable of rendering the compelling state interest test applicable.

Finally, the state offers a rational basis which is at least acceptable. The superimposition of this program could conceivably create much administrative difficulty and uncertainty. It might not create the chaos which the state maintains it would, but there is enough indication that administration would be rendered complex that it cannot be said that the state's apprehensions are imaginary.

■ Secondly, a "spend-down program" could encourage excessive medical expenses and resultant waste. Linked to

6. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

\* \* \* The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. See Snell v. Wyman, D.C., 281 F.Supp. 853, aff'd, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511. It is a standard that

has consistently been applied to state legislation restricting the availability of employment opportunities.

\* \* \* \* \*

We need not explore all the reasons that the State advances in justification of the regulation. It is enough that a solid foundation for the regulation can be found in the State's legitimate interest in encouraging employment and in avoiding discrimination between welfare families and the families of the working poor. *Id.*

this, of course, is the ever present need for preserving revenue. It would seem though that the constantly shifting standard is the strongest reason in justification of the state's decision not to exercise its option. In the light of the *Dandridge* decision we must, therefore, uphold the federal-state scheme against the contention that there is a violation of equal protection and due process.

\* \* \*

The plaintiffs have presented a case in which gross inequity is apparent, especially in the extreme cases used to demonstrate the problem presented to this Court, but this fact cannot serve as a basis for our overturning a program on constitutional grounds.

It follows that the claims are insufficient in law, and accordingly that the complaints and causes of action should be and the same are hereby dismissed. We request that counsel for defendants submit an appropriate judgment approved as to form by counsel for plaintiffs.