501 P.2d 1374

Bessie CURTIS, Plaintiff-Respondent,

v.

Bill CHILD, as Commissioner of the Idaho Department of Public Assistance, Defendant-Appellant.

Minnie M. LINTHICUM, Plaintiff-Respondent,

v.

Bill CHILD, as Commissioner of the Idaho Department of Public Assistance, Defendant-Appellant.

Nos. 10861, 10862.

Supreme Court of Idaho.

Oct. 5, 1972.

Rehearing Denied Nov. 3, 1972.

W. Anthony Park, Atty. Gen., Richard C. Russell, Asst. Atty. Gen., Boise, for appellants.

Michael C. Moore, Lewiston, for respondents.

DONALDSON, Justice.

The two cases involved in this appeal present common issues, and were consolidated for consideration of such issues by this Court. Both of the plaintiffs-respondents are elderly ladies and have been patients in the Lewiston Orchards Nursing Home for a number of years. Both of them are bedridden and unable physically or mentally to care for themselves; neither of them have any relatives upon whom they can call for assistance. The record discloses that nursing home care is essential to their subsistence. Each of the respondents has income of slightly over $200 per month derived from benefits from the Veterans Administration and from payments under the Social Security Law. It is undisputed that privately arranged nursing home care would cost far in excess of each of the respondent's monthly income.

Nursing home care in the Lewiston Orchards Nursing Home was provided for

each of the respondents, with payment for such care coming from each respondent's Veterans Administration payments and Social Security payment, plus additional payments being made by the Department of Public Assistance (hereinafter referred to as the department or as the DPA). Social Security payments were increased by Congress, and because of such increase, each of the respondents was then receiving income in excess of that specified by the department for eligibility to receive assistance, and on April 1, 1970, the respondents' old age assistance was terminated.

After their assistance was terminated, each of the respondents applied for and had a hearing before a department hearing officer. Following these hearings, decisions were entered affirming the termination of each of the respondent's public assistance grant. Appeals were taken to the district court pursuant to I.C. § 67–5215. The district court ruled that the respondents were "medically needy individuals" within the meaning of I.C. § 56–209b and that the department's regulations denying them aid were arbitrary, capricious, and unreasonable, and therefore unenforceable. The trial court in its judgments reversed the determinations of the hearing officer and ordered medical assistance to each of the respondents reinstated.

The appeals in these cases were taken following the trial court's entry of findings of fact, conclusions of law, and judgment in favor of the individual respondents. We affirm these judgments for the reasons set out below.

The welfare program in issue is the nursing home care benefits segment of Medicaid, a medical assistance program for the poor, established by Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 et seq. The program is financed through contributions from both the federal and state governments, and is administered by the states, guided by federal statutory regulations. 42 U.S.C.A. § 1396a. When a state (at its option) decides to participate in Medicaid, the state is required by §

1396a(a)(10) to provide medical assistance to those persons receiving benefits under one of the state's federally-aided public assistance programs established for the blind, aged, totally and permanently disabled, and families with dependent children. Recipients under one of these federally assisted welfare programs are denoted "categorically needy" for purposes of eligibility for Medicaid. 45 CFR 248.10.

The federal legislation also provides for assistance programs for persons who do not qualify as "categorically needy" but can, nonetheless, be deemed "medically needy." 42 U.S.C.A. § 1396a(a)(10), (17). Whether the federal legislation makes this phase of the program mandatory or optional with each participating state is the initial issue to be resolved in this appeal.

In addition, appellant in its assignments of error, raises two pertinent issues which must be considered in the disposition of this appeal. First, appellant contends the district court erred in concluding I.C. § 56–209b, which defines the general scope of Idaho's medical assistance plan, makes mandatory the inclusion of "medically needy" (in addition to "categorically needy") persons as eligible recipients of Medicaid benefits. Second, appellant rejects the district court determination that the DPA regulation discriminates against a class of needy persons, in violation of the equal protection guarantees of the United States and Idaho Constitutions.

## OPTIONAL NATURE OF THE MEDICALLY NEEDY CLASSIFICATION

Respondents urge that the Social Security Act does not make optional but rather mandates that states provide Medicaid assistance to those who qualify as "medically needy." The district court found that the import of the federal legislation was to make this aid optional. The district court properly construed the Act.

The pertinent portions of the Act are 42 U.S.C.A. § 1396a(a) subsections (10) and (17). Subsection (17) appears to support respondents' contention. That subsection

requires the state to adopt reasonable standards of eligibility for Medicaid, comparable for all groups. The subsection also contains a "flexible income" or "spend-down" provision which requires the state plan to "provide for flexibility in the application of such standards with respect to income by taking into account * * * the costs * * * incurred for medical care or for any other type of remedial care recognized under State law." 42 U.S.C.A. § 1396a(a)(17). The inference is that since the language of subsection (17) is mandatory, its provisions require a state to consider medical needs in defining eligibility. If respondents' necessary medical expenses were subtracted from their gross incomes, each would fall within the $152.80 cut-off.

It is undeniable that this subsection, considered by itself, lends strong support to respondents' contention that the federal legislation precludes the DPA from declaring their ineligibility. Subsection (17) must, however, be read in light of the other subsections of the Act, specifically subsection (10). Subsection (10) plainly explains that a state plan must extend aid to the recipients of aid under the four specified categories of assistance programs. The second part details what the plan must include "if medical or remedial care and services are included for any group of individuals who are not receiving aid * * * under any such State plan [of the four specified categories] and who do not meet the income and resources requirements of [such a plan]."

Thus, a reading of subsection (10) indicates that coverage of the "medically needy" is optional with the states. Wilczynski v. Harder, 323 F.Supp. 509, 515 (D.Conn.1971); Fullington v. Shea, 320 F.Supp. 500, 505 (D.Colo.1970), aff'd mem., 404 U.S. 963, 92 S.Ct. 345, 30 L.Ed.2d 282 (1971). But when a state has adopted the optional "medically needy" phase, the "spend-down" provision contained in subsection (17) is applicable. As the court in Fullington v. Shea stated, in discussing claims under the Colorado medical assistance program:

"It is thus clear that coverage of the 'medically needy' is optional with the states. Colorado has not chosen to cover this group of people and the statute [1396a] does not demand that they do so. *If there were such a plan, the plaintiffs' argument that the cut-off point could only be established after medical expenses had been deducted from net income would have merit.*" 320 F.Supp. at 505.

The federal regulations in 45 CFR 248.21 specifically provide that if the medically needy are included in the state medical assistance plan, the "available income" of a medically needy person must be determined in a "flexible" manner:

"§ 248.21 Financial eligibility—medical assistance programs.

(a) *State plan requirements.* A State plan under title XIX of the Social Security Act must:

\* \* \* \* \* \*

(2) With respect to both the categorically needy and, if they are included in the plan, the medically needy:

(i) Provide that only such income and recources as are actually available will be considered and that income and resources will be reasonably evaluated;

\* \* \* \* \* \*

(3) With respect to the medically needy, if they are included in the plan:

\* \* \* \* \* \*

(ii) Provide that there will be a flexible measurement of available income which will be applied in the following order of priority:

(a) First, for maintenance, so that any income in an amount at or below the established level will be protected for maintenance;

(b) Next, income in excess of that needed for maintenance will be applied to costs incurred for medical insurance premiums and for necessary medical or remedial care recognized under State law and not encompassed within the

State plan for medical assistance. States may set reasonable limits on such medical services for which excess income may be applied.

(c) All of the remaining excess income will be applied to costs of medical assistance included in the State plan."

CONSTRUCTION OF THE STATUTE

As indicated above, states have the option, upon deciding to participate in Medicaid programs, to extend benefits to "medically needy" persons—those who, but for income in excess of the eligibility limits, could qualify as categorically needy. The district court found that the Idaho legislature, by amendment of I.C. § 56–209b in 1966, enacted this option:

"56–209b. Medical assistance.—*Medical assistance shall be awarded* to persons who are recipients of old-age assistance, aid to dependent children, aid to the blind, aid to the permanently and totally disabled and *to such other persons as may be defined under the authority of this act to be medically needy individuals.*" (Emphasis added.)

The court then determined that one who requires nursing home care and cannot pay $255.00 per month, or whatever the reasonable minimum for such care might be, is a "medically needy" person within the purview of I.C. § 56–209b.

To decide this issue, this Court must indulge in an exercise of statutory construction. Since there is no legislative history to give us insight into the Idaho legislature's collective minds, the literal, but logical, wording of the entire statutory scheme

of medical assistance (I.C. § 56–201 et seq.) must be considered. 42 U.S.C.A. § 1396a.

Appellant contends that the legislature did not intend to extend medical assistance to medically needy persons. In support of this contention appellant notes that when I.C. § 56–209b was amended, the legislature had no experience upon which to base a projection of the magnitude of the Medicaid program, since the federal Medicaid legislation, 42 U.S.C.A. § 1396 et seq., had been drafted only one year earlier. Therefore, appellant asserts the legislature only intended to include the essential categorically needy, while leaving to future legislatures the option to expand the program should experience prove it desirable. Appellant cites other sections of the Idaho Code, to be considered *in pari materia* with I.C. § 56–209b. I.C. § 56–201,[1] *inter alia,* defines medical assistance as payments for medical care made under the authority of the federal Medicaid legislation *"as may be designated by the department [DPA] by rule and regulation."* Appellant also relies on I.C. § 56–202(b)[2] which creates a duty on the part of the DPA to establish such rules and regulations "as may be necessary or proper to carry out the provisions of this act [State Medical Assistance Program]." I.C. § 56–203[3] enumerates the powers of the DPA under the act, including the power to define medically needy individuals and to determine the scope and amount of medical care to be purchased for recipients. Appellant also faults the district court's construction of I.C. § 56–209b, emphasizing the portion of the statute which

1. I.C. § 56–201(*o*): "(*o*) 'Medical assistance' shall mean payments for part or all of the cost of such care and services enumerated in section 1905(a)(1) through (15) of the Federal Social Security Act as amended by the Social Security Act amendments of 1965, Public Law 89–97, 89th congress, as may be designated by the department by rule and regulation."

2. I.C. § 56–202(b): "(b) Establish and enforce such rules and regulations and such methods of administration as may

be necessary or proper to carry out the provisions of this act."

3. I.C. § 56–203(g): "(g) Define medically needy individuals in such terms as will meet requirements for federal financial participation in medical assistance payments."
I.C. § 56–203(i): "(i) Determine the amount, duration and scope of care and services to be purchased as medical assistance on behalf of needy eligible individuals."

provides for assistance to "such other persons *as may be defined under the authority of this act* [i.e., by the DPA] to be medically needy individuals." The sum of appellant's argument can be described in the alternative—either (1) the legislature did not mandate that Idaho's Medicaid program include rendering assistance to medically needy persons or (2) defining medically needy persons is left wholly to the discretion of the DPA, which allows the department not to include any persons within this category. We find this dual reasoning unpersuasive. From a plain reading of I.C. § 56–209b, Medicaid assistance is required for medically needy individuals as well as the "categorically needy." The medically needy are a separate and distinct category from each of the other four categories, and the mandatory language in the statute (Medical assistance *shall* be awarded) applies to each of the five classifications. This construction is not inconsistent with and does not infringe upon the DPA's authority to decide to whom medical assistance should be advanced under I.C. § 56–201(*o*). Under I.C. § 56–202 and I.C. § 56–203, read in light of our construction of I.C. § 56–209b, the DPA is given the responsibility for defining medically needy individuals. However, the DPA's discretion is subject to the limitation contained in I.C. § 56–203(g), which provides that the department shall have the power to "[d]efine medically needy individuals *in such terms as will meet requirements for federal financial participation in medical assistance payments*". The term "medically needy" is specifically defined by federal regulation, as follows:

> "The term 'medically needy' refers to an individual whose income and resources equal or exceed the State's standards under the appropriate financial assistance plan but are insufficient to meet his costs for medical insurance premiums and for necessary medical and remedial care and services recognized under State law but not encompassed in the State plan for medical assistance,

plus his costs for medical and remedial care and services included in the State plan." 45 CFR 248.10(a)(2).

According to this definition, the respondents are "medically needy" individuals. One of the requirements of federal financial participation is that a state, in determining the financial eligibility of medically needy individuals, must use a "flexible measurement of available income," as delineated in 45 CFR 248.21(a)(3)(ii) (set forth above). The DPA has failed to use such a flexible measurement in determining the financial eligibility of the respondents; the DPA has, therefore, failed to follow legislative direction and failed to meet one of the requirements of federal financial participation. The DPA has defined the eligibility conditions for medically needy individuals in such terms as do not meet the requirements for federal financial participation in medical assistance payments to medically needy individuals, contrary to the legislative intent expressed in I.C. § 56–203(g).

The applicable DPA regulations provide that nursing home services are available as medical assistance to individuals who would, upon application, be eligible for inclusion in one of the categorical programs (i.e., by being old, or disabled, or blind, or having dependent children) and whose income is less than $152.80. DPA Operating Policies and Procedures ¶¶ 3161(2) and 3162.1(h). When a flexible measurement of available income is added to the existing regulations, both of the respondents qualify for medical assistance because they are elderly with insufficient available income (after it is applied to maintenance and necessary medical services) to afford the costs of nursing home services included in the state plan. Therefore, after the respondents' available income has been applied to the costs of nursing home services in an approved nursing home (i.e., one which charges no more than $255 per month), each of them is entitled to medical assistance in an amount equal to the difference between $255 and the amount of income

applicable to the costs of such care. 45 CFR 248.21.

 Because of our conclusion on the statutory interpretation question, it is unnecessary to reach the constitutional issue of whether the department's denial of medical assistance to the respondents denied them equal protection of the laws. In general, this Court will not pass on questions of constitutionality unless it is absolutely necessary to do so in order to determine the merits of the case. Swensen v. Buildings, Inc., 93 Idaho 466, 463 P.2d 932 (1970); Hill v. Schultz, 71 Idaho 145, 227 P.2d 586 (1951); Twin Falls Canal Co. v. Huff, 58 Idaho 587, 76 P.2d 923 (1938).

Judgments affirmed. Costs to respondents.

McQUADE, C. J., and COGSWELL, D. J., concur.

McFADDEN, Justice (dissenting).

It is my conclusion that the majority opinion erred in concluding I.C. § 56–209b requires medical assistance (Medicaid) to be furnished to not only the "categorically needy" but to all who are "medically needy." As I read the statute, medical assistance must be furnished only to those who are considered as "categorically needy" leaving the other category optional.

This Court on several occasions has considered the administrative interpretation given statutes as a guideline in arriving at what the legislature intended in enacting a particular statute. In Application of Idaho Hospital Ass'n, 73 Idaho 320, 251 P.2d 538 (1952), this Court stated:

"Administrative interpretation over a period of years has, and is entitled to, great weight, United Pacific Ins. Co. v. Bakes, 57 Idaho 537, at page 545, 67 P. 2d 1024, and will be followed unless there are urgent or cogent reasons to the contrary. McCall v. Potlatch Forests, Inc., 69 Idaho 410, at page 413, 208 P.2d 799." 73 Idaho at 324, 251 P.2d at 540.

More recently this Court stated in Messenger v. Burns, 86 Idaho 26, 382 P.2d 913 (1963):

"In construing a statute, it is the duty of this court to ascertain the legislative intent, and give effect thereto. In ascertaining this intent, not only must the literal wording of the statute be examined, but also account must be taken of other matters, 'such as the context, the object in view, the evils to be remedied, the history of the times and of the legislation upon the same subject, public policy, contemporaneous construction, and the like,' In re Gem State Academy Bakery, 70 Idaho 531, 541, 224 P.2d 529, 535." 86 Idaho at 29–30, 382 P.2d at 915.

In Idaho Public Utilities Commission v. V–1 Oil Company, 90 Idaho 415, 412 P.2d 581 (1966), it is stated:

"A construction given a statute by executive or administrative officers of the state is entitled to great weight and will be followed by the court unless there are cogent reasons for holding otherwise. (Citing cases.)" 90 Idaho at 420, 412 P.2d at 583.

In this instance the Department of Public Assistance (now Department of Social and Rehabilitation Services, S.L.1972, Ch. 196, p. 483) has clearly demonstrated that since the 1966 amendment of I.C. § 56–209b, at the second extraordinary session of the thirty-eighth session of the legislature, it has consistently determined that medical assistance shall be furnished only to those who are considered as "categorically needy."

After enactment at the special legislative session the Department of Public Assistance adopted numerous rules and operating policies and procedures, including Section 3161, Manual of Operating Policies and Procedures. This particular section pertains to the matter of eligibility for medical assistance and limits the eligibility to

"(1) Recipients of money payments for Old Age Assistance, Aid to the Blind,

Aid to Dependent Children (including all children and adults included in the Aid to Dependent Children payment) and Aid to the Permanently and Totally Disabled; (7-1-66).

(2) Individuals, who upon application would be eligible for money payments under any of the above categories. * * * (9-15-69).

(3) Children under 21 in foster homes or private institutions for whom the Department is assuming financial responsibility in whole or in part (4-1-70)."

Section 3163.2, Manual of Operating Policies and Procedures, provides:

"The test of eligibility for Medical Assistance is the test of eligibility under one of the four assistance categories. * * *."

The foregoing quoted provisions from the department's Manual of Operating Policies and Procedures is a clear indication of the interpretation the department has made of I.C. § 56-209b, the questioned statute. These rules were adopted pursuant to the legislative authority of I.C. § 56-201(o),[1] § 56-202,[2] and I.C. 56-203.[3]

That the legislature itself has accepted the department's interpretation of I.C. § 56-209b that medical assistance is to be furnished only to the "categorically needy" is demonstrated by the fact that since enactment of I.C. §§ 67-5217 and 5218[4] in 1969 the department's rules and regulations have been submitted to the legislature and no action has been taken by that body.[5]

Further proof of the legislature's acceptance of the department's statutory inter-

---

1. I.C. § 56-201(o). "As used in this act: (o) 'Medical assistance' shall mean payments for part or all of the cost of such care and services enumerated in section 1905(a)(1) through (15) of the Federal Social Security Act as amended by the Social Security Act amendments of 1965, Public Law 89-97, 89th congress, *as may be designated by the department by rule and regulation.*" (Emphasis added.)

2. I.C. § 56-202. "The state department shall:
 (a) * * *
 (b) Establish and enforce such rules and regulations and such methods of administration as may be necessary or proper to carry out the provisions of this act; * * *."

3. I.C. § 56-203. "The state department shall have the power to:
 * * * * *
 (g) define medically needy individuals in such terms as will meet requirements for federal financial participation in medical assistance payments. * * *

4. I.C. § 67-5217. "Transmittal of rules for legislative action—Referral to appropriate legislative committee.—All rules heretofore or hereafter authorized or promulgated by any state agency, including all rules kept and maintained by the state law library, as provided in chapter 52, title 67, Idaho Code, shall be transmitted to the secretary of the senate and the chief clerk of the house of representatives by the law librarian of the state law library before the first day of

the regular session of the legislature next following the promulgation or publication thereof. The law librarian of the state law library shall similarly file during any regular session of the legislature all rules promulgated between the first day of the session and adjournment sine die thereof. The secretary of the senate and the chief clerk of the house of representatives shall lay all such rules before the senate and house of representatives, respectively, and the same shall be referred to the respective standing committees in the same manner as bills are referred to the committees."
I.C. § 67-5218. "Effect of committee action.—If the committee to which any rule shall have been referred, or any member of the legislature, shall be of the opinion that such rule is violative of the legislative intent of the statute under which such rule was made, a resolution may be adopted rejecting, amending or modifying the same. Every rule promulgated within the authority conferred by law, and in accordance with the provisions of chapter 52, title 67, Idaho Code, shall be in full force and effect until the same is rejected, amended or modified by the legislature."

5. Senate Journal 2d Reg.Sess. 40th Legis. 1970, p. 10; House Journal 2d Reg. Sess., 40th Legis., 1970, p. 13; Senate Journal, 1st Reg.Sess. 41st Legis., 1971, p. 9; House Journal, 1st Reg.Sess. 41st Legis., 1971, p. 23; Senate Journal 2d Reg.Sess., 41st Legis., 1972, p. 9; House Journal 2d Reg.Sess. 41st Legis., 1972, p. 16.

pretation of I.C. § 56–209b is to be found in the Executive Budget 1972–73 at page 163 thereof, wherein there is set forth the breakdown of the average number and average monthly payments for the four categories of recipients. On that page it is specifically stated that

"The following items are not included in the budget as presented but should be considered:

1. The following programs would be beneficial to the health and well-being of Idahoans:

a. Unemployment parent program under the Aid to Dependent Children program.

b. Medically needy program for all Idahoans.

c. General Assistance program. * * *."

The legislature in making the appropriation to the Department of Social and Rehabilitation Services, did not expand the department's request. S.L.1972, Ch. 363, p. 1069.

It is my conclusion that the majority opinion has failed to consider the legislative and departmental interpretation of the statute and is imposing upon the department demands beyond its fiscal capacity to fulfill, and further that the trial court was in error in its interpretation of I.C. § 56–209b.

While the majority opinion by reason of its conclusion did not reach another issue presented by the appellant in this case, under my view that the trial court erred in its determination, I am obligated to consider it.

This additional issue is the contention by the appellant that the district court erred in its ruling that sections 3161 and 3150.1 of the department's regulations, arbitrarily, capriciously and unreasonably excluded from medical assistance persons who did not qualify under one of the four categories for public assistance. This same argument attacks the district court's ruling that the exclusion of medical needy who do not otherwise qualify for assistance is likewise arbitrary, capricious, unreasonable, and violative of I.C. § 56–209b, and is an abuse of administrative discretion by the department. In considering this argument, it is to be pointed out that the legislature by statute required that medical assistance be granted to any one who was eligible under the four categories mentioned in I.C. § 56–209b, and provided it should also be awarded "to such other persons *as may be defined* under the authority of this act". (Emphasis added.) As previously pointed out, I am of the opinion that the legislature then left it to the department itself to make this definition by rule. The department under this authority then adopted the rules in question which make ineligible anyone with a monthly income in excess of $152.80. In effect the trial court ruled that this income standard is an unreasonable and discriminatory classification and hence constitutionally impermissible.

The Supreme Court of the United States in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), involving the question of whether a Maryland statute providing for aid to dependent children was unconstitutional in fixing a maximum amount to be paid to any family regardless of the number of children in the family, stated:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L.Ed. 369. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may

be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business and industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. See Snell v. Wyman, D.C., 281 F.Supp. 853, aff'd, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511. It is a standard that has consistently been applied to state legislation restricting the availability of employment opportunities. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163; Kotch v. Board of River Port Pilot Com'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L. Ed. 1093. See also Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435. And it is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy." 396 U.S. 485–486, 90 S.Ct. 1161–1162.

See also, Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

Respondents, however, take exception to reliance upon Dandridge v. Williams, *supra*, as authority that the department's rules are not constitutionally discriminatory. They claim the instant case is distinguishable from *Dandridge* on the basis that in *Dandridge* the case was dealing with a maximum limitation on aid to families with dependent children while in this case the question is whether the individual respondents are going to receive anything at all.

A similar contention to that of respondents was presented in the case of Fullington v. Shea, 320 F.Supp. 500 (D.C.1970), Rehearing Denied, 404 U.S. 963, 92 S.Ct. 345, 30 L.Ed.2d 282. In that case the opinion pointed to the following statement contained in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961),

"A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." 320 F. Supp. at 506.

and also the statement in *Dandridge*,

" * * * [I]t does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' * * *." 320 F.Supp. at 506.

The Court in Fullington v. Shea found a rational basis on which discrimination was acceptable, i.e. "superimposition" of a program whereby needy recipients would be selected by an income formula which accounts for necessary monthly medical expenses—a "spenddown" formula [6]—could conceivably create significant administrative difficulties and uncertainties and also could encourage excessive medical expenses and resultant waste, factors affecting the state's ever present need for preserving revenue. 320 F.Supp. at 506, 507.

What was said in Fullington v. Shea is applicable to the present case. At oral argument and in its brief, appellant alludes to the very complex problem facing the legislature when it considered the implementation of the Title XIX program of the Social Security Act in Idaho. It was pointed out that the cost of fully implementing it by bringing into its sphere of coverage persons other than those presently receiving payments under one of the

6. See 42 U.S.C.A. § 1396(a)(17).

four categories was unknown.[7] During the course of the years since then the legislature has had an opportunity to change the rules and regulations, but has not seen fit to do so (see n. 4, 5), even though it has had to annually fund the various programs of the department.

It is my conclusion that under Title XIX of the Social Security Act, it was optional with the states as to whether medical assistance would be furnished to other than those categories receiving public assistance; that the department rules and regulations were enacted pursuant to legislative authority and that the classification brought about by the application of such rules and regulations is founded upon a rational basis, and the state's decision not to exercise the option is constitutionally permissible.

In conclusion, it is appropriate to repeat the language of the Court in Fullington v. Shea, statements I deem applicable to the instant appeals:

"The plaintiffs have presented a case in which gross inequity is apparent, especially in the extreme cases used to demonstrate the problem presented to this Court, but this fact cannot serve as a basis for our overturning a program on constitutional grounds." 320 F.Supp. at 507.

The judgments of the district court should be reversed and the causes remanded for the district court to enter judgments in conformity with this opinion.

SHEPARD, J., concurs.

7. Congress clearly recognized the problem of limited state resources in funding the old-age assistance and medical assistance for the aged programs. 42 U.S.C.A. § 301 reads:
"For the purpose (a) of enabling each State, *as far as practicable under the conditions in such State*, to furnish financial assistance to aged needy individuals, (b) *of enabling each State, as far as practicable under the conditions in such State*, to furnish medical assistance on behalf of aged individuals

who are not recipients of old-age assistance but whose income and resources are insufficient to meet the costs of necessary medical services * * *." (Emphasis added.) See also, 42 U.S.C.A. §§ 1381, 1396.

The State has the authority to define the standard of need of individuals who could receive benefits. See 42 U.S.C.A. §§ 1382, 1396a(a)(5); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Dandridge v. Williams, *supra.*