637 P.2d 1159

C. Lynn VAN ORDEN and Mary Van Orden, husband and wife, individually, and d/b/a Canyon Care Center, Plaintiffs-Respondents,

v.

STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, and Milton G. Klein, its Director, Defendants-Appellants.

No. 13269.

Supreme Court of Idaho.

Oct. 30, 1981.

Rehearing Denied Dec. 22, 1981.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Stanley R. Voyles, Deputy Atty. Gen., Dept. H & W, Boise, for defendants-appellants.

Ray Wendell Rigby, Gordon S. Thatcher, and Breck H. Barton of Rigby, Thatcher, Andrus, Barton & Walters, Rexburg, for plaintiffs-respondents.

SHEPARD, Justice.

This is an appeal from a reversal of an order of the Department of Health and Welfare suspending a provisional license and denying a full license for a shelter home. The district court reversed the Department's order on the basis that the Van Ordens had been denied procedural due process. We reverse the order of the district court.

Since the decision of the district court was based solely on alleged procedural irregularities, it is necessary that the procedures leading to the ultimate order of the Department of Health and Welfare be reviewed at length.

In April of 1977 the plaintiff-respondents Van Ordens purchased certain real property and facilities located thereon which were formerly operated as the Teton Living Center, a shelter home for persons unable to care for themselves. In January 1977 pursuant to a consent judgment, the previous operators of the facility had had their application for renewal of license rejected and the previous operators were precluded, both directly and indirectly, from the operation of any shelter home facility within the state for various periods of time up to five years. In March 1977, the respondents Van Ordens applied for a license to operate the facility and a *provisional* license was granted effective until September 9, 1977. A full license is issued for one year to a facility which is in substantial compliance with the laws and regulations governing shelter homes. A provisional license is issued for a period not to exceed six months to a facility not in substantial compliance with the laws and rules pending its satisfactory correction of deficiencies. *See* Shelter Home Standards, § 2–4003.03.

On September 14, 1977, the Department notified the respondents Van Ordens of its serious concerns regarding their qualifications for a full license. Those concerns included the failure to respond to the Department's request for information regarding quantity and quality of staff, the accidental drowning of a resident during the provisional license period, the failure to fence a stream running through the grounds and the concern that the consent decree prohibiting the previous operators from having any interest in the facility was being violated. It is disputed whether at that time there was a denial of the full license and the scheduling of a post denial hearing or whether the Department simply notified the Van Ordens of its concern and scheduled an evidentiary hearing prior to a final decision of the Department. It is conceded that the notification of September 14 indicated that although the provisional license was scheduled to expire on September 9, it would nevertheless be extended through the completion of the hearing and the provisional license was so extended.

On October 12, 1977 and prior to the scheduled hearings the Van Ordens were notified that the provisional license was summarily suspended effective October 17 and that a post suspension hearing was scheduled for October 21. It was stated

that the summary action was taken because of an emergency situation endangering the safety of the residents, including drastic understaffing, semi-abandonment of the residents, failure to repair a fire alarm system and failure to prevent the discharge of firearms in the area of resident housing.

Following an abortive judicial proceeding, the provisional license was in effect revived since the parties stipulated that the center would continue to operate pending a hearing on a suspension of the provisional license and action on the full license. That hearing was conducted during November, 1977 and consisted of extensive testimony, numerous exhibits, arguments and written briefs by the attorneys and an on-site visit by an appointed hearing officer.

On January 6, 1978, the hearing officer issued a written opinion in which the procedural due process requirements were discussed, and he concluded that the Department's action regarding the full license was consistent with the procedural due process requirements of the Constitution, the Idaho statutes and the shelter home regulations; that the Van Ordens were notified in detail of the alleged violation; and that the summary suspension of the provisional license was based on the belief that the conditions constituted an emergency endangering the safety of the residents at the facility. He further concluded that the prehearing suspension also complied with the procedural due process requirements.

The Van Ordens sought judicial review of the Department's order and the parties stipulated that the review would be upon the record in conformity with I.C. § 67–5215. The Department's order was stayed pending review by the district court.

Following its review, the district court reversed the Department's order on the basis of the court's interpretation of the full license denial and the temporary license suspension. The court found that an emergency situation did not exist of such proportions as to relieve the agency from "adjudicating requirements."

## I. PROCEDURAL DUE PROCESS

The Due Process Clause of the XIV amendment mandates procedural safeguards against a state's deprivation of an individual's liberty and property interests. The State does not argue the absence of a protected property interest and hence we assume, *arguendo*, that such a protected property interest existed, and the question then is what process is due. The Van Ordens contend they had a constitutional right to notice and a hearing *before* the Department could deny their full license application or suspend their provisional license.

" '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). As stated in Mathews:

> "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, *supra*, 424 U.S. at 335, 96 S.Ct. at 903.

The district court held that the Department had denied a full license and offered a post denial hearing. The interest involved here is the pursuit of a business enterprise dependent upon state licensure and the stability of that business would obviously be harmed if the facility were closed pending a review. In the case at bar, however, there could be no such effect since the provisional license was extended through the date set for the application hearing. Thus, there was no actual deprivation on September 14 and thus, no value

in additional or substitute safeguards. Even if the agency's action were construed as a denial of the application pending subsequent review, there would have been no constitutional deprivation in light of the obvious and substantial government interest in safeguarding the health and safety of the shelter home residents. The district court further held that the Department summarily suspended the provisional license in the absence of an emergency situation. Again, we note that the facility remained open and in operation by stipulation, and by virtue of the stay order of the district court, it presumably remains operational to the date of today's opinion. Assuming, *arguendo*, that the Department's order of October 12 effectively and in actuality suspended the provisional license and then offered a post denial hearing, we hold the Van Ordens were not denied procedural due process and hence the district court's order was erroneous.

Both statutes and regulations mandate notice and hearing prior to a Department decision to deny or revoke in the absence of an emergency situation.

I.C. § 39–3303, which sets forth the shelter home licensing procedure, provides that "[t]he director may deny an application or revoke any license when persuaded by evidence that such conditions exist as to endanger the health or safety of any resident. Before denial or revocation, the director shall provide opportunity for a hearing at which the owner or sponsor of the shelter home under question may appear and show cause why the license should not be denied or revoked.

\*      \*      \*      \*      \*      \*

"Hearings for licensure, including denial and revocation, shall be conducted by the director pursuant to chapter 52, title 67, Idaho Code [the Administrative Procedures Act], and appeal shall be as provided therein."

The Administrative Procedures Act in turn provides that

"No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that the public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined." I.C. § 67–5214(c).

The pertinent agency regulations governing shelter homes similarly provide for denial or revocation.

"*Hearings for Licensure, Including Denial or Revocation.*

(a) The applicant shall be notified by registered mail or by personal service of the action to deny or revoke the license and the reasons for denial or revocation.

(b) A date will be set for the purpose of a hearing before the Director of the Department of Health and Welfare or his designee.

(c) On the basis of such a hearing, or upon failure of the applicant to present himself, the Director of the Department of Health and Welfare or his designee shall make and specify by registered mail or by personal service to the applicant his *final decision to deny, revoke, or grant the license.*" § 2–4003.10 (Emphasis added.)

"*Emergency Action by Director.* In the event of an emergency endangering the life or safety of a resident, the Director may summarily suspend or revoke any shelter home license. As soon thereafter as practicable, the Director shall provide an opportunity for a hearing." § 2–4003–12.

Where an emergency situation exists which threatens the public safety and where the individual interest is of lesser importance, an official body can take sum-

mary action pending a later hearing. *E.g., Hathaway v. Mathews,* 546 F.2d 227 (7th Cir. 1976); *Case v. Weinberger,* 523 F.2d 602 (2nd Cir. 1975); *Washington Nursing Center v. Quern,* 442 F.Supp. 23 (S.D.Ill. 1977); *Ross v. State of Wisconsin Dept. of Health & Social Services,* 369 F.Supp. 570 (E.D.Wis.1973). *Accord Mathews v. Eldridge, supra.*

Here there is little question but that suspension of the license would have an adverse effect on the economic interest of the Van Ordens. However, we hold that that interest is of lesser importance than the safety and welfare of the residents. The hearing officer found on the basis of substantial, if controverted, evidence that the facility remained understaffed, that it was at times semi-abandoned, that the fire alarm system was inoperative and that firearms had been discharged on the premises. The conclusion of the hearing officer that an emergency situation existed is sustained by the findings and the evidence and is reinstated. A prompt post-suspension hearing was made available and hence the action of the Department on October 12, even assuming that it effectively terminated the provisional license, did not violate procedural due process.

Judicial review of an administrative order is confined to the record, I.C. § 67–5215(f), and the reviewing court may not substitute its judgment for that of the administrative hearing officer on questions of fact. *Tappen v. State Dept. of Health and Welfare,* 98 Idaho 576, 570 P.2d 28 (1977). Here the review of the district court was made on the record of the administrative hearings. The findings of the hearing officer are clear, concise and dispositive. Those findings are supported by the evidence and in turn those findings support the conclusions of the hearing officer. We hold that the district court improperly substituted its own findings of fact for those made by the hearing officer.

The hearing officer found that a full adversary hearing was conducted prior to the Department's final order denying the full license. Such finding is not clearly erroneous in view of the reliable, probable and substantial evidence in the record. Further, the hearing officer's findings of the deficiencies at the facility are supported by the record and form an adequate basis for his conclusion that the health and safety of the residents were endangered, that an emergency situation existed and such was sufficient basis for any summary suspension of the provisional license.

## II. THE MERITS OF THE DEPARTMENT'S ORDER

The district court concluded that there had been a violation of procedural due process and consequently it did not review the merits of the Department's order, *i.e.,* it did not review whether that order was arbitrary, capricious or characterized by an abuse of discretion. The district court's review was limited to the record before it and therefore it was and is in no better position than this Court to determine whether, based on the findings, the evidence and the conclusions, the Department's order was arbitrary, capricious or characterized by an abuse of discretion.

■ The State legislature, under the broad concept of police power, may enact laws concerning the health, safety and welfare of the people so long as the regulations are not arbitrary or unreasonable. *See Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976). We find no substantial contention that the relevant statutes and regulations are arbitrary, capricious or unreasonable on their face, but only that they were arbitrarily and capriciously applied against the Van Ordens and their facility.

■ We have reviewed the evidence presented to the hearing officer. His findings regarding the quantity, quality and accessibility of staff, as well as those findings regarding the need for increased staff, the accidental death, the unfenced stream, the instance of staff abandonment, the inoperative fire alarm system and the discharge of firearms are all supported by the record. Those findings support the conclu-

**668**

sion that the license application should be denied. We hold that the denial of the full license and the summary suspension of the provisional license were not arbitrary, capricious or characterized by an abuse of discretion. The decision of the district court is hereby reversed and the order of the Department denying the full license and suspending the provisional license is therefore reinstated. Costs to appellants. No attorney fees on appeal.

BAKES, C. J., and McFADDEN, BISTLINE and DONALDSON, JJ., concur.

BISTLINE, Justice, specially concurring.

I agree with much which is stated in the Court's opinion,[1] and I am in agreement that the district court judgment should be reversed; however, I do not find it necessary to reach the issue of procedural due process—this simply based on the proposition that in this case the Idaho statutory procedures afford procedural due process, and are even substantially more protective than is constitutionally mandated. Those procedural requirements were respected.

The Van Ordens' entire argument that a denial was made prior to hearing rests on their assertion that the September 14th letter from state health officer Dr. John Ashley constituted such within the meaning of I.C. § 39–3303. This assertion is untenable for two reasons. First, I.C. § 39–3303 empowers the *director* to deny a license application *only* after notice and hearing. Even if a staff member, such as Dr. Ashley, prior to hearing attempted to issue the final denial contemplated by I.C. § 39–3303, such would be without the requisite authority. Second, and I think more pertinent, the letter itself, while opening with language capable of being interpreted as a final denial, goes on to state that "a decision has been made to deny"—which clearly imports the

notion that denial may take place *in futuro* —which language, coupled with other language in the same letter which language provides unambiguous notification that a hearing will be held, and that the provisional license will continue in effect until the hearing, should have left no genuine doubt that the issue of final denial remained open. A hearing officer (not Dr. Ashley) conducted the November hearing and recommended to the director that the application be denied. The director, after reviewing the record, including the recommendations of both Dr. Ashley and the hearing officer, then denied the application. As a factual matter, then the Van Ordens were afforded a hearing prior to denial, within the meaning of I.C. § 39–3303, of their license application.

It is a well established principle that this Court will not pass on constitutional issues unless absolutely necessary for determination of a case. *Poesy v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977); *Curtis v. Child*, 95 Idaho 63, 501 P.2d 1374 (1972). Hence there is no need under the facts and circumstances of this case to reach and discuss the constitutional issue.

---

1. I do not see the reason for the majority's citation to I.C. § 67–5214(c). Subsection (c) applies by its terms only to "revocation, suspension, annulment, or withdrawal of any license ...." We are here concerned with a denial of an *initial* application for a license— which requires a prior hearing by virtue of I.C. § 39–3303. I.C. § 67–5214(a) provides that

"When the grant, denial, or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this act concerning contested cases apply." This specifically makes application of I.C. §§ 67–5209— 67–5213 dependent, at least as to initial applications for licenses, upon separate code provisions such as I.C. § 39–3303.