**WASHINGTON NURSING CENTER, INC., a Delaware Corporation, Fondulac Nursing Manor, a Nevada Corporation, Mary Marshall, Loretta Hays, Anna Harvey, and Fay Pyle, Plaintiffs,**

v.

**Arthur F. QUERN, Director of Public Aid, State of Illinois, Defendant.**

Civ. No. 77–3113.

United States District Court,
S. D. Illinois, S. D.

Nov. 18, 1977.

K. Peter Kemezys, Moehle, Reardon, Smith & Day, Ltd., Springfield, Ill., for plaintiffs.

William J. Scott, Atty. Gen., State of Ill., Springfield, Ill., Donald J. Townsend, Asst. Atty. Gen., State of Ill., Springfield, Ill., for defendant.

## MEMORANDUM AND ORDER

J. WALDO ACKERMAN, District Judge.

This cause is now here on plaintiff's motion for preliminary injunction. A temporary restraining order has previously been issued in this case on October 28, 1977. Plaintiffs' motion for preliminary injunction is hereby granted for the reasons stated below.

Plaintiffs here can be divided into two groups. First, are the institutional plaintiffs, Washington Nursing Home Center, Inc., a Delaware corporation, and Fondulac Nursing Manor, a Nevada corporation. These two plaintiffs are institutional providers of nursing home care services and provide such services to patients entitled under the "Medicaid program", Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* The second group of plaintiffs are individual patients at either the one or the other of the plaintiff institutions, who have received services paid for under the Medicaid program.

Plaintiffs here, seek to enjoin the termination of what is known as the "nursing home hardship rate." The institutional plaintiffs assert that defendant's proposed termination of the hardship rate as to them violates 42 U.S.C. § 1983 and due process of law since no hearing was given them on the

proposed termination and the hardship program is administered without written guidelines. The individual patient plaintiffs also assert that their rights under 42 U.S.C. § 1983 are being violated by the proposed termination and further that their statutory rights to notice and hearing prior to a reduction in assistance as provided in 45 C.F.R. § 205.10(a)(5) are violated by defendant's termination.

It is apparent from the pleadings in this case that the Medicaid program pays each nursing home directly, for the services provided to the individual Medicaid patients in that home's care. The institutional plaintiffs assert that the actual costs of the care provided exceed Medicaid payments. Washington Nursing Center, Inc., assertedly serves an average of 45 Medicaid patients per day. Washington asserts that the actual cost of services provided per Medicaid patient per day is $20.79 and that the total reimbursement per Medicaid patient per day is $16.47. This last figure includes the base rate payment, payment for any add-on programs, and points, which are additional payments caused by the greater degree of care requirements for any particular patient. This figure also includes, plaintiff asserts, sixty-three cents per day per Medicaid patient paid through the nursing home hardship rate.

Plaintiff Fondulac Nursing Manor asserts similar figures. Fondulac claims that an average of 55 Medicaid patients per day are served and that the cost of service per patient per day is $22.98. Total payments received by Fondulac under the Medicaid program are currently at $17.54 per patient per day. This figure includes a current hardship rate of $1.45 per Medicaid patient per day.

According to the defendant's memorandum in opposition to the preliminary injunction, the hardship rate was inaugurated on January 29, 1976, by the creation of a board of private citizens appointed by the Director of the Illinois Department of Public Aid. This board was designed to accept applications and develop standards for ruling on hardship requests submitted by nursing homes treating Medicaid patients. Of a total of 215 nursing homes applying for the hardship rate, 51 were eventually granted increases. The board has since dissolved and the Illinois Department of Public Aid has taken on the function of administering the hardship program.

Since the board did not articulate or announce the standards upon which it made its recommendations, the Illinois Department of Public Aid reviewed the board's minutes and derived a set of seven criteria from which it appeared that the increases had been granted. These criteria can be seen in an interoffice memorandum supplied to the Court by defendant as Exhibit 3. Defendant asserts that future participation of the homes which had received increases was to be determined by adhering to the written criteria although there is no indication that these guidelines were ever made known to anyone outside the Illinois Department of Public Aid.

On June 29, 1977, both institutional plaintiffs received letters notifying them that they would be discontinued from the hardship program effective August 1, 1977. Plaintiff Washington Nursing Center was informed that it was being dropped because its level of Medicaid occupancy was below that set by the criteria. Plaintiff Fondulac Nursing Manor was informed that it was being dropped for failure to file an Annual Report with the Department of Public Health as required by Chap. 111½ Ill.Rev. Stat. § 35.24, but was later denied reconsideration of the decision on the ground that its Medicaid occupancy too, was below the level set by the criteria.

Putting aside plaintiffs' claim of the lack of written guidelines, the institutional plaintiffs assert that they had a right to a hearing before the reduction in payments was affected. In support of this claim, plaintiffs cite *Hathaway v. Mathews*, 546 F.2d 227 (7th Cir. 1976) and *Case v. Weinberger*, 523 F.2d 602 (2nd Cir. 1975). Both these cases as defendant contends, are factually distinguishable, since both cases involve total termination of Medicaid payments by the Federal Government. Here,

what is involved is the termination of additional state funds amounting to a relatively small portion of the total Medicaid payments per patient.

■ What the cases cited by plaintiff do establish however, is that the institutional plaintiffs, through their expectation of continuing to receive Medicaid payments on behalf of their patients, have a property right protected under the Constitution which cannot be deprived without due process of law. Due process in this context requires, at a minimum, notice and a hearing. Given these principles, defendant's distinctions are distinctions without a difference. For the purposes of due process it makes no difference whether the deprivation is total or partial. Nor does it matter that the deprivation is effected by the state rather than the Federal Government.

Although the two decisions cited above differ in result on the issue of whether a pre-termination hearing is required to comport with due process, the rationale is consistent. Absent an emergency situation, that is, an immediate hazard to the health and safety of the residents, a pretermination hearing before an impartial fact finding in which the charges against the institution can be contested, is required. *Hathaway, supra,* at 230.

■ As to the claims of the individual patients, defendant argues that the hardship program is in the form of a subsidy paid directly to those institutions where the actual costs of the services provided greatly exceed the rate of reimbursement. Defendant asserts that the amount of services rendered to the individual patient remains the same whether or not the institution is a participant in the hardship program. Therefore, defendant argues that there has been no reduction of welfare benefits within the meaning of the federal regulations and case law cited by plaintiffs. The argument is, that since defendant is not discontinuing reimbursement for any of the services rendered by the institutional plaintiffs, but merely changing the level of reimbursement for such services, the individual patients on whose behalf these funds are paid,

have suffered no reduction in benefits. Further, defendant argues that should any future reduction occur, that reduction will be an independent management decision of the plaintiff nursing homes and not the result of any state action.

While defendant's argument has some surface appeal, it would appear to me to emphasize form over substance. It seems axiomatic that where the state reduces the level of reimbursement for services provided to Medicaid patients, the level of the services provided must also be diminished. I am unwilling to assume that the providers of the services will increase the cost of services to non-Medicaid patients, in order to maintain the level of services to the Medicaid patients. Thus, I do not believe that the reduction of the welfare benefits paid to the individual patients is in any way, indirect or speculative. Therefore, the full weight of the cases and regulations cited by plaintiffs apply in this situation, requiring notice and hearing for each individual recipient prior to the reduction.

Under these circumstances, on the basis of the claims made either by the institutional plaintiffs or by the individual plaintiffs the motion for preliminary injunction must be granted.

The ruling of the Court is as follows:

(1) Plaintiffs' motion for preliminary injunction is granted. The defendant, his agents, servants, and employees are prohibited from reducing or terminating any rates or benefits paid or granted to the institutional plaintiffs under the Illinois Nursing Home Hardship Rate Program, which is a part of the Medicaid program, without notice being given to each and every plaintiff, such notice setting forth the reasons for such reduction and/or termination, and an opportunity for hearing being given to each and every plaintiff where the plaintiffs could contest such reduction or termination.

(2) The bonds of $15,000 which have previously been filed in this case as security pursuant to the temporary restraining order, by the institutional providers, are hereby ordered to continue in effect and are to serve as security pursuant to this order.